# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>LENOVO GROUP LIMITED.<br><br><br>　　　　　　　　　Defendant. | Case No. 2:23-cv-00449-JRG |

## DEFENDANT LENOVO GROUP LIMITED'S
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 2

II.     BACKGROUND ................................................................................................. 2

III.    LEGAL STANDARD.......................................................................................... 4

IV.     THE COURT LACKS PERSONAL JURISDICTION OVER LGL.................................. 5

        A.      There Is No General Jurisdiction Over LGL ........................................ 5

        B.      There is No Specific Jurisdiction Over LGL ......................................... 6

                1.      LGL Has Not Directed Any Activities at Texas................................... 7

                2.      Specific Jurisdiction Does Not Lie Under an Agency or Alter Ego
                        Theory ................................................................................................ 9

                3.      Specific Jurisdiction Does Not Lie Under a Stream-of-Commerce
                        Theory ............................................................................................. 13

                4.      Exercising Specific Jurisdiction Over LGL Would
                        Be Unreasonable .............................................................................. 15

        C.      Rule 4(k)(2) Does Not Provide an Alternate Basis for Personal
                Jurisdiction........................................................................................ 18

V.      CONCLUSION................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
  No. 1:17-cv-84-LPS, 2019 WL 3974539 (D. Del. Aug. 22, 2019) ............................... *passim*

*ACQIS LLC v. Lenovo Grp. Ltd.*,
  572 F. Supp. 3d 291 (W.D. Tex. 2021).................................................................7, 12, 14, 15

*Androphy v. Smith & Nephew, Inc.*,
  31 F. Supp. 2d 620 (N.D. Ill. 1998) ............................................................................9

*Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*,
  480 U.S. 102 (1987)..................................................................................13, 15, 16

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009)...................................................................................4

*AX Wireless LLC v. Lenovo Grp. Ltd.*,
  No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023) .................. *passim*

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
  No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018).......................8

*Baden Sports, Inc. v. Molten USA, Inc.*,
  556 F.3d 1300 (Fed. Cir. 2009)....................................................................................10

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
  49 F.4th 520 (5th Cir. 2022) .......................................................................................11

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
  582 U.S. 255 (2017)....................................................................................................5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).......................................................................................5, 6, 8, 16

*CAO Lighting, Inc. v. Signify N.V.*,
  628 F. Supp. 3d 996 (C.D. Cal. 2022) .........................................................................8

*Carmona v. Leo Ship Mgmt., Inc.*,
  924 F.3d 190 (5th Cir. 2019) .......................................................................................4

*Celgard, LLC v. SK Innovation Co.*,
  792 F.3d 1373 (Fed. Cir. 2015)....................................................................................10

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).............................................................................................6

*Quimbey ex rel. Faure v. Cmty. Health Sys., Inc.*,
  No. 14-cv-559, 2015 WL 13651236 (D.N.M. Sept. 22, 2015)..................................9

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021)...............................................................................4, 5, 6, 8

*Goodyear Dunlop Tires Operations, S. A. v. Brown*,
  564 U.S. 915 (2011)........................................................................................4, 6

*In re Great Lakes Dredge & Dock Co.*,
  624 F.3d 201 (5th Cir. 2010) ...............................................................................11

*Hanson v. Denckla*,
  357 U.S. 235 (1958)..............................................................................................8

*Hargrave v. Fibreboard Corp.*,
  710 F.2d 1154 (5th Cir. 1983) .....................................................................9, 10, 12

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)..............................................................................................5

*Licea v. Curacao Drydock Co., Inc.*,
  952 F.3d 207 (5th Cir. 2015) ...............................................................................10

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012)............................................................................18

*NexLearn, LLC v. Allen Interactions, Inc.*,
  859 F.3d 1371 (Fed. Cir. 2017)..............................................................................4

*Orange Elec. Co. Ltd. v. Autel Intelligent Tech. Corp. Ltd.*,
  No. 2:21-cv-240-JRG, Dkt. No. 217-1 (E.D. Tex. Apr. 19, 2024) ...........................17

*Pat. Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*,
  603 F.3d 1364 (Fed. Cir. 2010).......................................................................15, 16

*PHC-Minden, L.P. v. Kimberly-Clark Corp.*,
  235 S.W.3d 163 (Tex. 2007)................................................................................10

*Polar Electro Oy v. Suunto Oy*,
  829 F.3d 1343 (Fed. Cir. 2016)........................................................................13, 14

*Theta IP, LLC v. Motorola Mobility LLC*,
  No. 1:22-cv-3441, Dkt. No. 94 (N.D. Ill. Mar. 25, 2024)............................... *passim*

iii

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)................................................................................................................5, 8

**Other Authorities**

Fed. R. Civ. P. 4(k)(2)............................................................................................................18

## STATEMENT OF THE ISSUE

Whether this case should be dismissed because the Court lacks personal jurisdiction over defendant Lenovo Group Limited.

## I.      INTRODUCTION

A Canadian non-practicing patentee, Universal Connectivity Technologies Inc. ("UCT"), has sued a Hong Kong holding entity, Lenovo Group Limited ("LGL"), for patent infringement. Neither company has ties to this district.  UCT is a Delaware corporation based in Ottawa, Ontario, and conducts no non-litigation activity in Texas.  LGL, the holding company, makes no products, sells no products, and does not avail itself of the laws of Texas.  Incontrovertibly, it has not made, used, sold, offered for sale, or imported anything accused of infringement, in Texas or elsewhere. It has neither physical locations nor employees in Texas or elsewhere in the United States.  No one has been harmed in Texas by the alleged infringement.  The parties' pre-suit negotiations did not take place in Texas.

None of this is a surprise to the patentee, as it brought suit knowing full well that a different, legally-distinct corporation—Lenovo (United States) Inc. ("Lenovo US")—is responsible for the accused activities in the United States, and that distinct corporation is properly subject to suit in other venues.  The patentee's choice of forum cannot trump the basic requirements of haling a foreign defendant into an unforeseen court.  Under these facts, an exercise of personal jurisdiction over the sole named defendant is inconsonant with either the correct law or any interests of justice.

## II.     BACKGROUND

UCT filed its complaint in this action on September 28, 2023.  Dkt. No. 1.  In its complaint, UCT alleges that LGL infringes the claims of eight patents.  In general, UCT contends that various Lenovo-branded computing products infringe the claims of the asserted patents by virtue of their purported compliance with the DisplayPort and/or USB standards.  In addition to its infringement claims, UCT brought a declaratory judgment claim, Count IX, seeking a declaration that it conducted pre-suit negotiations with the defendant "in good faith" and did not violate the

intellectual property rights policies of the standards organizations responsible for overseeing the DisplayPort and USB standards.  *Id.* ¶¶ 99–101.

In its complaint, UCT provides a series of conclusory allegations to further its assertion that personal jurisdiction lies in this case.  UCT alleges, without support, that LGL "does business in Texas and in the Eastern District of Texas, directly or through intermediaries."  *Id.* ¶ 3.  UCT similarly speculates that LGL places the accused products "into the stream of commerce via established distribution channels knowing or understanding that such products would be sold in the United States, including in the Eastern District of Texas."  *Id.* ¶ 4.  UCT also alleges that LGL and its subsidiaries "operate as agents of one another and vicariously as parts of the same business group to work in concert together."  *Id.* ¶ 8.

The true facts of this case, however, are clear: LGL conducts no activities in or directed to this forum or even in the United States at all.  LGL, the only named defendant in this case, is a holding company based in Hong Kong that serves as a direct and indirect parent company for its subsidiaries.  Decl. ¶¶ 2–3.[1]  LGL does not manufacture, sell, offer for sale, export, import, or otherwise distribute any Lenovo-branded products.  *Id.* ¶ 3.  Moreover, LGL does not operate in the United States, nor does it make products for or offer services to customers in the United States. *Id.* ¶ 4.

The Lenovo-branded products that are accused in this case are sold by the legally-distinct LGL subsidiary Lenovo US, a separate corporation.  *Id.* ¶ 6.  Lenovo US buys those products from Lenovo PC HK—another LGL subsidiary—and then imports them into the United States for sale. *Id.*  LGL has no involvement in the daily business activities and decisions of Lenovo US that

---

[1] Exhibit 1, Declaration of Adrian Chim ("Decl.") has been filed concurrently with the present Motion to Dismiss.

pertain to the use, sale, offering for sale, marketing, distribution, or importation of Lenovo-branded products in the United States.  *Id.* ¶ 7.  And Lenovo US and LGL have entirely distinct sets of officers and directors, file separate tax returns, and maintain separate properties.  *Id.* ¶¶ 11–13.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint on the ground that the court lacks personal jurisdiction over the defendant.  As applied to patent claims, the existence of personal jurisdiction is evaluated under Federal Circuit law.  *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017).  The Federal Circuit's inquiry asks "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process."  *Id.* (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009)).  "Because Texas's long arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge."  *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citations omitted).

Under the Due Process Clause, a defendant may be subject to personal jurisdiction if one of two types of jurisdiction lies: general jurisdiction or specific jurisdiction.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).  General jurisdiction extends to any and all claims brought against a defendant, but it lies "only when a defendant is 'essentially at home' in the forum state."  *Id.* (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).  For a corporation, general jurisdiction typically lies in its "place of incorporation and principal place of business."  *Id.* at 359.

Specific jurisdiction, by contrast, "covers defendants less intimately connected with a State, but only as to a narrower class of claims."  *Id.*  For the exercise of specific jurisdiction to be proper, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject

4

to the State's regulation." *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)).

The Due Process Clause permits the exercise of specific jurisdiction over a defendant if there are sufficient "minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).  Such contacts exist if the defendant has "'purposefully directed' its activities at residents of the forum" and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).  In other words, a defendant is subject to jurisdiction only if it conducted activity in the forum state such that it should "reasonably anticipate being haled into court" there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

## IV.   THE COURT LACKS PERSONAL JURISDICTION OVER LGL

### A.   There Is No General Jurisdiction Over LGL

First, there can be no serious contention that LGL is subject to general jurisdiction in the Eastern District of Texas.[2]  The exercise of general jurisdiction is proper only when the defendant is "essentially at home" in the forum state; for corporations, this typically occurs at a defendant's place of incorporation and its principal place of business.  *Ford Motor Co.*, 592 U.S. at 358.  As UCT admits, LGL is a foreign company organized under the laws of China with its principal place of business in Hong Kong.  Dkt. No. 1 ¶ 3.  Accordingly, neither of the usual prerequisites for general jurisdiction apply to LGL.

---

[2] Although UCT does not expressly allege in its complaint that LGL is subject to general jurisdiction in this district, LGL addresses this issue for completeness.

Absent those two prerequisites, UCT must allege that LGL's affiliations with Texas are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear*, 564 U.S. at 919).  UCT's allegations on this point, however, are threadbare; UCT simply speculates that LGL "does business in Texas and in the Eastern District of Texas, directly or through intermediaries," in connection with the sale, marketing, and distribution of Lenovo-branded computer products.  Dkt. No. 1 ¶ 3.  Even if it were true that LGL conducts such activities in Texas (it does not), and those contacts were held to be sufficient to support the exercise of general jurisdiction, LGL would presumably be subject to general jurisdiction in all 50 states—as Lenovo-branded products are sold nationwide.  *See Daimler*, 571 U.S. at 139 ("[T]he same global reach would presumably be available in every other State in which [the defendant's subsidiary's] sales are sizable."); *see also* Decl. ¶¶ 3–9.  As the Supreme Court explained in *Daimler*, exercising jurisdiction in that scenario is "exorbitant" and would prevent defendants from "structur[ing] their primary conduct with some minimum assurance as to whether that conduct will and will not render them liable to suit."  *Id.* (quoting *Burger King*, 471 U.S. at 472).

In short, LGL has no contacts with Texas that are sufficiently "continuous and systematic" so as to "render [it] essentially at home" in Texas.  *See Goodyear*, 564 U.S. at 919.  Accordingly, there can be no general jurisdiction over LGL.

### B.     There is No Specific Jurisdiction Over LGL

Second, any assertion that LGL is subject to specific jurisdiction in Texas is misguided. Specific jurisdiction lies when there is "an affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Ford Motor Co.*, 592 U.S. at 359 (citation omitted). As an initial matter, LGL has not directed any activities at Texas.  Beyond that, UCT's complaint

suggests two baseless theories under which specific jurisdiction might lie: (1) the activities of LGL's subsidiaries can be imputed to LGL under an agency or "alter ego" theory; and (2) LGL and its subsidiaries act together to place the accused products into the stream of commerce, knowing that the products would be sold and used in the United States and specifically in Texas. *See* Dkt. No. 1 ¶¶ 8–9.  Neither theory supports the exercise of personal jurisdiction in this case.

This Court is not the first court to address the issue of personal jurisdiction over LGL. Courts in the District of Delaware and the Northern District of Illinois have held that LGL is not subject to personal jurisdiction in those districts under either an agency or a stream-of-commerce theory. *3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. 1:17-cv-84-LPS, 2019 WL 3974539, at *4–9 (D. Del. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 7635823 (D. Del. Sept. 19, 2019); *Theta IP, LLC v. Motorola Mobility LLC*, No. 1:22-cv-3441, Dkt. No. 94 at 4–12 (N.D. Ill. Mar. 25, 2024).  On the other side of the coin, courts in the Eastern and Western Districts of Texas have denied motions to dismiss LGL for lack of personal jurisdiction.  *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701, at *1–6 (E.D. Tex. Sept. 6, 2023) (report and recommendation)[3]; *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 305–07 (W.D. Tex. 2021). For the reasons explained below, this Court should adopt the reasoning of the *3G Licensing* and *Theta IP* cases.

### 1.    LGL Has Not Directed Any Activities at Texas

First, LGL has not directed any activities to Texas, let alone activities that relate to UCT's allegations of patent infringement.  As explained in the Chim Declaration, LGL is a holding company that conducts no activity in the United States or in Texas.  Decl. ¶¶ 3–5.  Specifically,

---

[3] The *AX Wireless* decision is the subject of a petition for writ of mandamus currently before the Federal Circuit, which was filed on November 30, 2023.  On March 25, 2024, the Federal Circuit ordered that the petition be held in abeyance pending the parties' negotiation of a settlement of the underlying action.  *In re: Lenovo Grp. Ltd.*, No. 24-106, Dkt. No. 13 (Fed. Cir. Mar. 25, 2024).

LGL does not "manufacture, sell, offer for sale, export, import, or otherwise distribute any Lenovo-branded products." *Id.* ¶ 3.  It does not "make products for the United States market[] or offer services to customers in the United States," nor does it have any presence (physical or otherwise) in Texas or any other state.  *Id.* ¶ 4.  And LGL does not control the activities of its subsidiaries with respect to any Lenovo-branded products, including the accused products, in the United States generally or Texas specifically.  *Id.* ¶¶ 7–13.

LGL's complete lack of contacts with Texas is critical because a key principle underlying the Supreme Court's personal jurisdiction jurisprudence is the concept of "purposeful availment." *Ford Motor Co.*, 592 U.S. at 359 (quoting *Burger King*, 471 U.S. at 359).  That is, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The reason for that requirement, the Court has explained, is that defendants must be able to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."  *Burger King*, 471 U.S. at 472 (quoting *World-Wide Volkswagen*, 222 U.S. at 297).

By refraining from engaging in any contacts with Texas or the United States at all, LGL has purposefully chosen to structure its conduct such that it should not be rendered liable to suit in any venue in the United States.  And that is a choice that LGL is entitled to make and is routinely respected by the U.S. legal system.  Courts regularly hold that a parent holding company is not subject to suit when the plaintiff's allegations are principally directed to the actions of a subsidiary. *See, e.g.*, *B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299, at *5 (E.D. Tex. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 354883 (E.D. Tex. Jan. 28, 2019) (dismissing "holding companies" that "do not make or sell anything");

*CAO Lighting, Inc. v. Signify N.V.*, 628 F. Supp. 3d 996, 1004 (C.D. Cal. 2022) ("Plaintiff does not establish that Defendant [a holding company] itself places any product in the stream of commerce."); *Quimbey ex rel. Faure v. Cmty. Health Sys., Inc.*, No. 14-cv-559, 2015 WL 13651236, at *7–8 (D.N.M. Sept. 22, 2015) (finding no specific jurisdiction where "[u]ncontroverted evidence establishe[d] that [the defendant was] a holding company" that did not operate the hospital where the alleged events occurred); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 622 (N.D. Ill. 1998) (finding no jurisdiction over "a holding company which neither transacts business nor contracts to provide products or services in Illinois").

Accordingly, there can be no specific jurisdiction over LGL on the basis that LGL itself conducts any activity in Texas.

### 2.       Specific Jurisdiction Does Not Lie Under an Agency or Alter Ego Theory

Second, there is no specific jurisdiction over LGL under an agency or alter ego theory. UCT imagines in its complaint that LGL's U.S.-based subsidiaries are LGL's "agents" and act "at the direction and control of [LGL]" with respect to the products accused in this case.  Dkt. No. 1 ¶ 8.  That allegation is entirely conclusory and is contradicted by the Chim Declaration.  Decl. ¶¶ 6–13.  The facts therefore do not support the exercise of personal jurisdiction over LGL under either theory.

As the Fifth Circuit has explained, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).  For the actions of a subsidiary to be imputed to the foreign parent, the parent must "exert[] such domination and control over its subsidiary 'that they do not in reality constitute

9

separate and distinct corporate entities'" but are instead "one and the same corporation for purposes of jurisdiction."  *Id.* (citation omitted).  LGL is a publicly traded company, subject to strict audit and regulatory requirements; any implication that LGL operates as a ruse or mere alter ego of its subsidiaries would not stand scrutiny under these unforgiving requirements.

Likewise, as the Federal Circuit explained in *Celgard, LLC v. SK Innovation Co.*, to establish jurisdiction under an agency theory, "the plaintiff must show that the defendant exercises control over the activities of [a] third party."  792 F.3d 1373, 1379 (Fed. Cir. 2015).  However, the degree of control exercised to establish jurisdiction must be "greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice."  *Licea v. Curacao Drydock Co., Inc.*, 952 F.3d 207, 213 (5th Cir. 2015) (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007)).[4]

UCT offers nothing but speculation to suggest that LGL exercises any control over its subsidiaries with respect to the accused products.  UCT cites one passage from LGL's 2022/23 Annual Report, which states, in relevant part: "Lenovo Group Limited . . . and its subsidiaries . . . develop, manufacture and market reliable, high-quality, secure and easy-to-use technology products and services."  Dkt. No. 1 ¶ 8 (quoting Dkt. No. 1-1 at 192).  UCT also notes that the report identifies certain wholly owned subsidiaries of LGL as "principal subsidiaries."  *Id.* (quoting Dkt. No. 1-1 at 276).  The statements relied on by UCT are general statements about global operations that are not tied to particular businesses, and thus offer no detail as to the

---

[4]  To the extent that Federal Circuit law and Fifth Circuit law differ on the question of whether LGL's subsidiaries are its agents or alter egos, Fifth Circuit law controls because those issues are not unique to patent law.  *See Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1304 (Fed. Cir. 2009) ("We apply the law of the regional circuit on non-patent issues.").

relationship between LGL and its subsidiaries.  As the Chim Declaration explains, LGL exercises no control over those entities.  *See, e.g.*, Decl. ¶¶ 7–13.  Finally, UCT offers an entirely conclusory assertion that LGL infringes the asserted claims "directly and/or through subsidiaries or intermediaries."  Dkt. No. 1 ¶ 11.  The Court is not required to accept such conclusory allegations as true.  *See BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 525 (5th Cir. 2022) (at the pleading stage, "conclusory allegations, unwarranted factual inferences, or legal conclusions" are not accepted as true (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010))).

The *3G Licensing* decision is on all fours with respect to the agency theory of personal jurisdiction.  In support of its argument that LGL exercised control over its subsidiaries, plaintiff 3G provided excerpts from an LGL annual report, not unlike the one cited in UCT's complaint, and made several conclusory allegations in its complaint about the relationship between LGL and its subsidiaries.  *3G Licensing*, 2019 WL 3974539, at *4–5, 7.  In response, LGL submitted a declaration, not unlike the Chim Declaration, which elaborated on LGL's activities and relationship with its subsidiaries.  *Id.* at *6.  In view of the complete record, the Delaware court found the allegations in the complaint to be "entirely conclusory," and explained that the excerpts of the annual report "d[id] not refer to the statements or acts of Lenovo Group, a holding company, but instead to those of its operating subsidiaries."  *Id.* at *7.  Accordingly, the Delaware court found personal jurisdiction to be lacking under an agency theory.  *Id.* at *7–8.

In *Theta IP*, the Northern District of Illinois court found personal jurisdiction to be lacking under an agency theory on similar facts.  As here and in *3G Licensing*, the plaintiff relied on excerpts of an LGL annual report, and LGL submitted a declaration explaining its activities and subsidiary relationships.  *Theta IP*, Dkt. No. 94 at 7–8.  In view of that evidence, the *Theta IP*

court found that the plaintiff did not "provide[] sufficient evidence that LGL controls" its subsidiaries such that it could be subject to personal jurisdiction under an agency theory. *Id.* at 10.

The *ACQIS* case, in which a Western District of Texas court reached the opposite conclusion, is unsound in its reasoning.[5]  In finding personal jurisdiction to lie under an agency theory, the *ACQIS* court relied principally on two allegations made by the plaintiff: (1) that "LGL created an entire subsidiary—Lenovo US—to distribute products in the United States"; and (2) that LGL's treasurer allegedly executed one contract on behalf of Lenovo PC HK, a Hong Kong-based LGL subsidiary.  *ACQIS*, 572 F. Supp. 3d at 307.  The first allegation cannot, by itself, be enough to support jurisdiction, as it would swallow the general rule that the "mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  *See Hargrave*, 710 F.2d at 1159.  And the second allegation, which related to a single contract involving a non-U.S. subsidiary, is simply too attenuated to support the exercise of specific jurisdiction.  *ACQIS*, 572 F. Supp. 3d at 307.  Even if that allegation were true (it is not), LGL's alleged involvement with a single subsidiary contract does not "rise to the level of intermingling that would pull LGL into this Court's jurisdiction."  *See Theta IP*, Dkt. No. 94 at 9. As the *Theta IP* court explained, the performance of "standard administrative service[s]" by a parent company for its subsidiaries does not create sufficient minimum contacts to support personal jurisdiction.  *Id.* (citation omitted).  For those reasons, LGL respectfully submits that the plaintiff in *ACQIS* did not provide a sufficient basis to establish personal jurisdiction, and the Western District of Texas misapplied the allegations to the law in that case.[6]

---

[5]  The court in *AX Wireless*, the remaining decision that has addressed personal jurisdiction over LGL, did not reach the parties' arguments about the agency or alter ego theories of jurisdiction. *AX Wireless*, 2023 WL 7105701, at *3 & n.2.

[6]  Notably, the court in *ACQIS* did not address or even acknowledge the conflicting *3G Licensing* opinion, which issued prior to the *ACQIS* decision.

In short, UCT's complaint provides no basis for establishing specific jurisdiction beyond conclusory allegations that LGL controls the actions of its subsidiaries with respect to the accused products.   Accordingly, the Court cannot exercise personal jurisdiction over LGL on an agency theory.   *See 3G Licensing*, 2019 WL 3974539, at \*7–8; *Theta IP*, Dkt. No. 94 at 7–10.

### 3. Specific Jurisdiction Does Not Lie Under a Stream-of-Commerce Theory

Third, there is no specific jurisdiction under a stream-of-commerce theory.  UCT baselessly alleges in its complaint that LGL, "alone and through its U.S.-based subsidiaries," places the accused products "into the stream of commerce . . . knowing or understanding that such products would be sold in the United States, including in the Eastern District of Texas."  Dkt. No. 1 ¶ 9. That allegation is conclusory, false, and in direct conflict with the Chim Declaration.  Decl. ¶¶ 3–6.  The facts do not support the exercise of personal jurisdiction over LGL under a stream-of-commerce theory.

The Supreme Court's case law regarding the "stream of commerce" theory of jurisdiction is split between two tests.  *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348–49 (Fed. Cir. 2016).  The narrower theory, articulated by Justice O'Connor in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, requires that there must be more than the mere "placement of a product into the stream of commerce" to establish jurisdiction; that is, jurisdiction "must come about by an action of the defendant purposefully directed toward the forum State." 480 U.S. 102, 112 (1987) (citation and emphasis omitted).  The broader theory, articulated in Justice Brennan's concurrence in *Asahi*, requires only that the defendant be aware that placing the product in the stream of commerce could result in the product reaching the forum state.  *Id.* at 116–17 (Brennan, J., concurring in part and concurring in the judgment).  The Federal Circuit has frequently declined to resolve this split, generally holding that the outcome "would be the same

under either test." *Polar Electro Oy*, 829 F.3d at 1349–50 (collecting cases); *see also Theta IP*, Dkt. No. 94 at 11.

The same is true in this case: UCT has failed to show that personal jurisdiction lies under either articulation of the stream-of-commerce theory. Both approaches require as a prerequisite that the defendant place a product into the stream of commerce. *See Polar Electro Oy*, 829 F.3d at 1348–50. But the facts in this case are clear; LGL does not place ***anything*** into the stream of commerce. *See* Decl. ¶¶ 3–13. LGL is "a holding company that does not produce goods or services itself," nor does it "place the accused products into the United States (and [Texas]) markets." *See 3G Licensing*, 2019 WL 3974539, at *6; Decl. ¶¶ 3–5.

The *Theta IP* decision is on point with respect to the stream-of-commerce theory. The court observed that the plaintiff's evidence—which included LGL's annual report and various agreements between LGL subsidiaries—did not "speak to [the subsidiaries'] relationship with LGL or LGL's role in manufacturing, selling, or marketing the Accused Products, or any other products for that matter." *Theta IP*, Dkt. No. 94 at 11. The court explained that, "at best," the plaintiff's evidence established that Lenovo's U.S.-based subsidiaries "partner with foreign LGL subsidiaries." *Id.* The same is true here, as none of UCT's conclusory allegations speak to "LGL's role in manufacturing, selling, or marketing the Accused Products." *Id.*; Dkt. No. 1 ¶¶ 8–9, 11; *see also* Decl. ¶¶ 3–13. Accordingly, the Court should likewise hold that UCT "has not provided sufficient evidence under either test." *See id.*

The decisions in *AX Wireless* and *ACQIS* do not compel a different result. In *AX Wireless*, the court accepted the plaintiff's allegation that "LGL purposefully ships Accused Products into the forum state through an established distribution channel," but failed to credit clear evidence that LGL is a holding company that conducts no activity in Texas or elsewhere in the United States.

14

*See AX Wireless*, 2023 WL 7105701, at \*4.  The court also relied on the fact that it did not conduct an evidentiary hearing on jurisdiction, and thus concluded the plaintiff needed only establish a prima facie case of personal jurisdiction.[7]  *Id.* at \*3.  Similarly, the court in *ACQIS* erroneously found that "LGL acts in consort with [its subsidiaries] under a stream of commerce theory" based on attenuated evidence, as discussed above.  *ACQIS*, 572 F. Supp. 3d at 305–07.  As the courts in *3G Licensing* and *Theta* IP recognized, the relevant facts are clear: LGL is a holding company that conducts no activity in the United States and does not control its subsidiaries.  *3G Licensing*, 2019 WL 3974539, at \*6–8; *Theta IP*, Dkt. No. 94 at 8–10.  Here, UCT has failed to set forth even a prima facie showing of personal jurisdiction, given that its asserted basis for personal jurisdiction is entirely conclusory and unsupported.  *See 3G Licensing*, 2019 WL 3974539, at \*7–8 (finding that the plaintiff failed to make a prima facie showing where its allegations were "entirely conclusory").

### 4.    Exercising Specific Jurisdiction Over LGL Would Be Unreasonable

Regardless of whether the above theories of specific jurisdiction are accepted, the Court should grant LGL's motion because UCT's assertion that personal jurisdiction lies over LGL is entirely unreasonable.  *See Pat. Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc*., 603 F.3d 1364, 1369 (Fed. Cir. 2010) (even where minimum contacts are present, the court may consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,' i.e., whether exercising jurisdiction would be reasonable" (citation omitted)).  As Justice O'Connor explained in *Asahi*, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  480 U.S. at 114.

---

[7] If the court is inclined to accept UCT's allegations despite clear evidence to the contrary, LGL respectfully requests an evidentiary hearing on those issues.

The Federal Circuit has outlined a series of factors that bear on whether the exercise of personal jurisdiction is reasonable in a particular case:  (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial systems' interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.  *Pat. Rts.*, 603 F.3d at 1369 (quoting *Burger King*, 471 U.S. at 476–77).  Those factors do not support exercising jurisdiction over LGL in this case.

As to the first factor, the burden of requiring LGL to litigate in Texas would be severe and unreasonable.  LGL is a holding company that does not make or sell any products (much less the accused products), does not conduct business in Texas, and maintains its headquarters and principal place of business thousands of miles away in Hong Kong. Decl. ¶¶ 2–3.  UCT attempts to force LGL to litigate in Texas—an international venue distant from its home—when there is absolutely no reason for it to have "foreseen" that it would be haled into court there. *See Burger King*, 471 U.S. at 474.  The Supreme Court has cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 114-15 (citation omitted).  Accordingly, the first factor weighs against exercising personal jurisdiction over a foreign corporation like LGL.

As to the second factor, Texas has no interest in resolving the present dispute.  UCT is a Delaware corporation having its headquarters in Ottawa, Ontario, Dkt. No. 1 ¶ 2, and there is no evidence that UCT conducts ***any*** non-litigation business in Texas.  In short, a corporation with no ties to Texas seeks to assert its patents against a foreign holding corporation in a Texas court, because UCT understandably prefers to litigate this case in Texas.  UCT's allegations of U.S.

16

activity are generally directed to Lenovo US, which is properly subject to suit in other venues, and those venues would have a more particularized local interest in deciding this case.

As to the remaining factors, there is no efficiency to be gained or interests to be served by exercising jurisdiction over LGL, a Hong Kong-based holding corporation.  UCT has no viable path to convenient and effective relief against LGL because its claims are not viable.  For example, UCT's infringement case has significant vulnerabilities, and its predecessors in interest likely failed to comply with the disclosure requirements of the relevant standards organizations.  In addition, there are no fundamental substantive social policies to be served by requiring a foreign holding corporation with no contacts in Texas to litigate thousands of miles from home against a Canadian non-practicing entity.  Instead, efficiency would dictate UCT suing the entities actually responsible for the allegedly infringing activity, in the venues proper for suing those entities. Failing that, the parties—and the Court—run the risk of investing the considerable resources needed to prepare this case for trial, only to reach a pyrrhic result, where LGL would legally not be culpable for any eventual liability because it does not engage in any Section 271 activities (and its conduct is extraterritorial to boot).  *See Orange Elec. Co. Ltd. v. Autel Intelligent Tech. Corp. Ltd.*, No. 2:21-cv-240-JRG, Dkt. No. 217-1 at 15–21 (E.D. Tex. Apr. 19, 2024) (no Section 271 infringement by a foreign parent company where the parent sold the accused products to its U.S. subsidiary in China).  In this case, LGL conducts no activity with respect to the manufacturing, sale, or distribution of the accused products.  Those activities are all conducted by LGL's U.S.-based subsidiaries, who could have been named as defendants but were not.

For all the above reasons, exercising personal jurisdiction over LGL would be unreasonable.

### C.      Rule 4(k)(2) Does Not Provide an Alternate Basis for Personal Jurisdiction.

Federal Rule of Civil Procedure 4(k)(2) does not provide an alternate basis for personal jurisdiction.[8]  If a plaintiff's claim arises under federal law, the court may exercise jurisdiction if (1) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (2) exercising jurisdiction is consistent with the United States Constitution and laws.  Fed. R. Civ. P. 4(k)(2).  Ultimately, the inquiry under the second prong is the same as that under the Due Process Clause, with one exception—LGL's contacts are evaluated with respect to the United States as a whole rather than Texas specifically.  *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293–94 (Fed. Cir. 2012).  Because LGL conducts no activity in the United States generally, there is no difference between result under Rule 4(k)(2) and the result under the Due Process Clause.  Accordingly, the facts of this case demand a finding of no personal jurisdiction under Rule 4(k)(2).

### V.      CONCLUSION

For the reasons set forth above, this case should be dismissed in its entirety because the Court lacks personal jurisdiction over LGL.

---

[8] Although Rule 4(k)(2) is not asserted as a basis for jurisdiction in UCT's complaint, *see* Dkt. No. 1 ¶ 11, LGL addresses this issue in view of the *AX Wireless* court's reliance on Rule 4(k)(2).  *See AX Wireless*, 2023 WL 7105701, at *4.

Dated: May 17, 2024

Respectfully Submitted,

*/s/ Melissa R. Smith*
Indranil Mukerji
MA Bar No. 644059
imukerji@willkie.com
Stephen Marshall
DC Bar No. 1012870
smarshall@willkie.com
Aliza George Carrano
DC Bar No. 995661
acarrano@willkie.com
Dane Sowers
TX Bar No. 24126820
dsowers@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendant Lenovo Group
Limited*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 17th day of May, 2024.

*/s/ Melissa R. Smith*