# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., | Case No.  2:23-cv-00449-JRG |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| LENOVO GROUP LIMITED, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................ 1

II.     RESPONSE TO LGL'S STATEMENT OF THE ISSUE TO BE DECIDED BY THE
        COURT ........................................................................................................................... 3

III.    FACTUAL BACKGROUND ........................................................................................ 3

IV.     LEGAL STANDARD .................................................................................................... 3

V.      ARGUMENT .................................................................................................................. 5

        A.      The Court Has Specific Personal Jurisdiction Over LGL ............................... 5

                1.      LGL has sufficient minimum contacts with Texas under a "stream of
                        commerce" theory ................................................................................. 5

                        i.    UCT's well-pleaded allegations .................................................. 5

                        ii.   Additional publicly-available information reinforces UCT's
                              allegations ................................................................................ 8

                2.      There is a nexus between LGL's contacts and UCT's claim for patent
                        infringement .......................................................................................... 9

                3.      Personal jurisdiction over LGL is reasonable and fair ........................ 10

                4.      LGL's Arguments Should be Rejected ................................................. 11

        B.      In The Alternative, The Court Has Personal Jurisdiction Under Rule 4(k)(2) .......... 16

        C.      The Court Should Grant Leave to Amend .................................................... 17

VI.     CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

## **Cases**

*ACQIS LLC v. Lenovo Grp. Ltd.*,
  572 F. Supp. 3d 291 (W.D. Tex. 2021) .................................................................. 1, 11, 12, 16

*Ainsworth v. Moffett Eng'g, Ltd.*,
  716 F.3d 174 (5th Cir. 2014) ........................................................................................ 5

*Androphy v. Smith & Nephew, Inc.*,
  31 F. Supp. 2d 620 (N.D. Ill. 1998) ............................................................................ 13

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*,
  No. 2:21-CV-00173-JRG, 2023 WL 6606722 (E.D. Tex. Oct. 6, 2023)..................................... 9

*AX Wireless LLC v. Lenovo Grp. Ltd.*,
  No. 2:22-cv-00280-RSW-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023)................ passim

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
  No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018)....................... 13

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) ...................................................................................... 4

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..................................................................................................... 10

*CAO Lighting, Inc. v. Signifiy N.V.*,
  628 F. Supp. 3d 996 (C.D. Cal. 2022) ........................................................................ 13

*Celgard, LLC v. SK Innovation Co., Ltd.*,
  792 F.3d 1373 (Fed. Cir. 2015) .................................................................................... 3

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*,
  916 F.3d 1350 (Fed. Cir. 2019)................................................................................... 17

*Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*,
  963 F.2d 90 (5th Cir. 1992) .......................................................................................... 8

*Core Wireless Licensing S.A.R.L. v. Apple, Inc.*,
  No. 6:14-cv-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015)........................... 17

*Eastern Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
  948 F.3d 289 (5th Cir. 2020) .................................................................................. 1, 3

*Elecs. For Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) .................................................................................... 4

*Int'l Truck and Engine Corp. v. Quintana*,
   259 F. Supp. 2d 553 (N.D. Tex. 2003) ................................................................. 8

*McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011)................................................................................................ 16

*Nuance Commc'n, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2012) ........................................................................... 10

*Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*,
   603 F.3d 1364 (Fed. Cir. 2010) ........................................................................... 10

*Quimby ex rel. Faure v. Cmty. Health Sys., Inc.*,
   No. 14-cv-559, 2015 WL 13651236 (D.N.M. Sept. 22, 2015)............................... 13

*Stingray IP Sols., LLC v. Signify N.V.*,
   No. 2:21-cv-00044-JRG, 2021 WL 9095764 (E.D. Tex. Oct. 25, 2021................... 15

*Theta IP, LLC v. Motorola Mobility LLC*,
   No. 1:22-cv-344, Dkt. 94 (N.D. Ill. Mar. 25, 2024) ................................................ 16

*Thomas v. Chevron U.S.A., Inc.*,
   832 F.3d 586 (5th Cir. 2016)................................................................................. 17

*Touchcom v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009) ........................................................................... 17

*Ultravision Techs., LLC v. Govision, LLC,*
   No. 2:18-CV-100-JRG-RSP, 2020 WL 1158606 (E.D. Tex. Mar. 9, 2020),
   *report and recommendation adopted*, No. 2:18-CV-100-JRG-RSP, 2020
    WL 1528521 (E.D. Tex. Mar. 30, 2020) ........................................................... 17

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)......................................................................................... 4, 10

## Other Authorities

Advisory Committee Notes to F.R.C.P. 4(k)(2) ......................................................... 16

## Rules

Fed. R. Civ. P. 15................................................................................................ 18

Fed. R. Civ. P. 4................................................................................... 2, 3, 14, 16

## I.      INTRODUCTION

The Court should deny Defendant Lenovo Group Limited's ("LGL") motion to dismiss Plaintiff Universal Connectivity Technologies Inc.'s ("UCT") Complaint (Dkt. No. 1, "Compl.") for lack of personal jurisdiction (Dkt. No. 18, "Mot." or "Motion").  UCT's allegations plainly establish that the Court has personal jurisdiction over LGL.

LGL's arguments have already been addressed, and rejected, by Judge Payne in *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-00280-RSW-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023)*.  In that case, LGL filed a nearly identical motion and supporting declaration.  *Id.* Dkt. Nos. 35, 35-7.  LGL argued—as it does here—that it is a holding company based in Hong Kong, it has no employees, assets, or operations in the United States, that it does not make or sell anything in the United States and Texas, and that it plays no role in putting any products into the stream of commerce. *Id.*, Dkt. No. 35-7 at 1-2.  Ultimately, Judge Payne rejected LGL's arguments and denied LGL's motion to dismiss.  *Id.*, Dkt. No. 110, at 5-6.  Because the facts in this case are nearly identical to those in *AX Wireless*, this Court should deny LGL's Motion on similar grounds.

Other Courts in Texas have also rejected similar motions to dismiss for lack of personal jurisdiction by LGL.  *See, e.g.*, *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 307 (W.D. Tex. 2021) ("this Court finds that the exercise of personal jurisdiction over [Lenovo Group Limited] is both reasonable and fair.").  Personal jurisdiction is based on LGL's contacts with the State of Texas (and not based on contacts with a specific District) and the reasoning in *ACQIS* is also applicable here.  *See, e.g.*, *Eastern Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020) ("Specific jurisdiction arises when a defendant's minimum contacts **with a forum state** are related to the pending lawsuit.") (emphasis added).  LGL has already been found (at least twice) to be subject to personal jurisdiction in Texas in patent infringement cases involving the same types of accused products, the same related entities acting in consort, and the same

1

contacts with the United States and the State of Texas.  LGL cannot justify ignoring these prior holdings.

Regardless, UCT's Complaint has adequately pled that personal jurisdiction exists over LGL.  For example, UCT's allegations demonstrate personal jurisdiction at least under a stream of commerce theory because LGL, alone and through its U.S.-based subsidiaries, delivers the LGL Accused Products into the stream of commerce with the expectation that they will be purchased by consumers in Texas.  Compl. ¶¶ 3-9, 11.  UCT's allegations are further confirmed by LGL's 2022/2023 Annual Report (cited throughout the Complaint), public representations on its website, and the presence of LGL leadership in the U.S., including in Texas.  *Id.*; *see also* Ex. 1 (Lenovo webpage – "Products" – https://www.lenovo.com/us/en/pc/ ); Ex.2 (Lenovo webpage – "Our Leadership" – https://www.lenovo.com/us/en/about/who-we-are/our-leadership/); Ex. 3 (Lenovo webpage – "Locations" – https://www.lenovo.com/us/en/about/locations/).  As such, LGL has sufficient minimum contacts with Texas to subject it to personal jurisdiction here.

Alternatively, this Court may find that personal jurisdiction exists over LGL under Fed. R. Civ. P. 4(k)(2).  Rule 4(k)(2) allows this Court to exercise jurisdiction over a foreign defendant, such as LGL, where that defendant has sufficient minimum contacts with the United States as a whole, but is not subject to jurisdiction in any one particular state.  LGL has not identified anywhere in the United States where it purports to be subject to jurisdiction and it should not be permitted to evade the judicial system in the United States entirely.  Thus, personal jurisdiction over LGL is also appropriate under Rule 4(k)(2).

To the extent the Court determines that there are any alleged deficiencies in UCT's pleadings (there are not), UCT requests that the Court grant it leave to amend its Complaint to remedy such alleged deficiencies.

## II.    RESPONSE TO LGL'S STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT

The Court should deny LGL's Motion and find, as it has done before, that LGL is subject to personal jurisdiction in Texas based on a stream of commerce theory, an agency/alter ego theory, and/or based on Fed. R. Civ. P. 4(k)(2).

## III.    FACTUAL BACKGROUND

On September 28, 2023, UCT filed its Complaint against LGL alleging patent infringement of United States Patent Nos. 7,154,905 ("the '905 Patent"),7,187,307 ("the '307 Patent"), 7,746,798 ("the '798 Patent"), 9,232,265 ("the '265 Patent"),8,680,712 ("the '712 Patent"), 7,856,520 ("the '520 Patent"), 7,921,231 ("the '231 Patent"), and 9,852,103 ("the '103 Patent") (collectively, the "Asserted Patents").  Compl. ¶ 1.  UCT's infringement allegations assert that LGL makes, uses, imports, offers for sale, and/or sells certain Lenovo-branded products (such as laptops, desktops, monitors, and docking stations) that infringe the Asserted Patents.  *Id.* at ¶¶ 3, 15, 26, 37, 48, 59, 70, 80, 90.

## IV.    LEGAL STANDARD

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment."  *Eastern Concrete Materials*, 948 F.3d at 295-96.  When, as here, Texas is the forum, "these two inquiries merge into one because the Texas long-arm statute permits the exercise of jurisdiction over a nonresident defendant to the fullest extent allowed by the United States Constitution."  *Id.* at 296.

Personal jurisdiction in patent cases is assessed using Federal Circuit law.  *See Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015).  "Due process requires that

the defendant have sufficient 'minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe co. v. Washington*, 326 U.S. 310, 316 (1945)).   To make that determination, the Federal Circuit assesses the following three factors: (1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair. *Id.*   "The first two factors correspond to the 'minimum contacts' prong of the International Shoe analysis, and the third factor with the 'fair play and substantial justice' prong." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).   The minimum contacts test is satisfied if a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)).

"Once the plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes defendants' burden to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"   *Coyle*, 340 F.3d at 1351-52. "Where, as here, a district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." *Id.* at 1349. "[A] district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

## V.      ARGUMENT

### A.      The Court Has Specific Personal Jurisdiction Over LGL

UCT has set forth facts sufficient to demonstrate that LGL is subject to personal jurisdiction in Texas.  To properly plead the existence of personal jurisdiction, UCT need only show "(1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant [is] fair and reasonable."  *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2014).   As detailed below, UCT more than adequately alleges facts sufficient to demonstrate the existence of personal jurisdiction over LGL in Texas.  An evidentiary hearing is not necessary and UCT's allegations set forth a *prima facie* case of specific personal jurisdiction.

#### 1.      LGL has sufficient minimum contacts with Texas under a "stream of commerce" theory

##### i.      UCT's well-pleaded allegations

UCT's Complaint alleges facts demonstrating that LGL has sufficient minimum contacts with Texas under a stream of commerce theory.  For example, UCT's Complaint alleges:

> Lenovo, alone and through its U.S.-based subsidiaries (such as Lenovo US and Lenovo Tech.), places such infringing products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas.

Compl. ¶ 9; *see also id.* at ¶¶ 3-4; *AX Wireless*, 2023 WL 7105701, at *3 ("AX Wireless contends personal jurisdiction is proper under a stream of commerce theory because LGL acts in concert with its subsidiaries to deliver products into the United States market.").  UCT's allegations are supported by factual details demonstrating that "Lenovo purposefully directs the Accused Products into established distribution channels within this District and the U.S. nationally."  Compl. ¶ 4. For example, "Lenovo sells and offers to sell the Accused Products through its website,

Lenovo.com, which may be accessed throughout the United States, the State of Texas, and this District." *Id.* In addition, LGL's 2022/23 Annual Report, cited in and attached to UCT's Complaint, describes LGL as a "global technology powerhouse, ranked #171 in the Fortune Global 500, employing 77,000 people around the world, and serving millions of customers every day in 180 markets." Ex. 4 (LGL 2022/23 Annual Report) at 1 ("Above Lenovo"). Moreover, LGL provides pension plans, savings plans, and deferred compensation benefits to certain U.S. regular, full-time, and part-time employees. *Id.* at 162-165.

UCT's Complaint further establishes that "Lenovo maintains a corporate presence in the United States via at least its wholly-owned U.S.-based subsidiaries, including Lenovo (United States) Inc. ('Lenovo US') and Lenovo Global Technology (United States) Inc. ('Lenovo Tech')." Compl. ¶ 5. This is confirmed by LGL's 2022/23 Annual Report, which identifies both of those U.S.-based subsidiaries in its list of "Principal Subsidiaries" and states that LGL's share of capital in each is 100%. Ex. 4 (LGL 2022/23 Annual Report) at 279, 281; *see also* Compl. ¶ 8. Notably, both Lenovo US and Lenovo Tech are registered to do business in Texas. *Id.* at ¶¶ 6-7.

The Complaint further establishes that Lenovo US and Lenovo Tech. operate in conjunction with and at the direction and control of LGL to make, use, import, offer to sell, and/or sell the LGL Accused Products in the United States and specifically in Texas—all of which are reinforced throughout LGL's 2022/23 Annual Report. Compl. ¶ 8 ("Lenovo and its U.S.-based subsidiaries (which act as part of a global network of sales and manufacturing subsidiaries) operate as agents of one another and vicariously as parts of the same business group to work in concert together."); Ex. 4 (LGL 2022/23 Annual Report) at 192 ("Lenovo Group Limited (the 'Company') and its subsidiaries (together, the 'Group') develop, manufacture and market reliable, high-quality, secure and easy-to-use technology products and services."). Indeed, LGL "identifies the 'principal

activities' for Lenovo US as '[d]istribution of IT products' and the 'principal activities' for Lenovo Tech. as '[p]rovision of IT services and distribution of IT products'"—underscoring their role in the distribution of the LGL Accused Products throughout the United States and in Texas.  Compl. ¶ 8 (citing LGL's 2022/23 Annual Report at 276).

Furthermore, LGL has specific contacts with the state of Texas through its authorized sellers and sales representatives.   For example, LGL "has authorized sellers and sales representatives that offer for sale and sell the Accused Products throughout the State of Texas and to consumers throughout this District, such as: Best Buy, 422 West Loop 281, Suite 100, Longview, Texas 75605; Costco Wholesale, 3650 West University Drive, McKinney, Texas 75071; Office Depot, 422 West Loop281, Suite 300, Longview, Texas 75605; Target, 3092 North Eastman Road, Suite 100, Longview, Texas 75605; and Wal-Mart, 1701 East End Boulevard North, Marshall, Texas 75670."   Compl. ¶ 4; *see also AX Wireless*, 2023 WL 7105701, at *4 ("Beyond a general U.S. presence, the FAC specifically identifies locations for Best Buy, Costco, Office Depot, Target, and Wal-Mart within this District as authorized sellers of the Accused Products that LGL, through the Lenovo Group, places into the stream of commerce.").   To that end, the Complaint demonstrates that "LGL purposefully ships Accused Products into the forum state through an established distribution channel" and is, therefore, subject to personal jurisdiction in Texas. *AX Wireless*, 2023 WL 7105701, at *4 ("AX Wireless presents evidence indicating LGL is at the head of the Lenovo Group – including LGL… Lenovo (United States), Inc., … and the Lenovo Group manufactures, sells, and distributes the Accused Products in the United States and worldwide.").

####    ii.    Additional publicly-available information reinforces UCT's allegations

In addition to the allegations set forth in UCT's well-pleaded Complaint, LGL's public representations and other publicly available information further confirm that LGL has sufficient minimum contacts with the state of Texas.  *See Int'l Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556-57 (N.D. Tex. 2003) ("In resolving a jurisdictional issue, the court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof.") (citing *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992)).  For example, LGL's website, Lenovo.com, indicates that LGL is at the head of the Lenovo Group, which is responsible for manufacturing, selling, and distributing the LGL Accused Products throughout the United States.  Ex. 1 (Lenovo webpage – "Products" - https://www.lenovo.com/us/en/pc/ ).  LGL's website identifies "Headquarters" in the U.S. and eight U.S. sales offices, one of which is located in Fort Worth, Texas.  Ex. 3 (Lenovo webpage – "Locations" - https://www.lenovo.com/us/en/about/locations/ ).

In addition, LGL has numerous employees that live and work in the United States, and in Texas, including several management level members.  For example, LGL's Executive Vice President and President of International Markets, Matthew Zielinski, resides and works in Texas. Ex. 2 (Lenovo webpage – "Our Leadership" - https://www.lenovo.com/us/en/about/who-we-are/our-leadership/ ).  Mr. Zielinski is one of LGL's identified "Leaders" and a member of LGL's Executive Committee.  *Id*.  He is responsible for "Lenovo's go-to-market charge across markets throughout Asia Pacific, Japan, EMEA, Latin America, and North America."  *Id*.  LGL also has additional management team members that live in the United States, including Kirk Skaugen and Laura G. Quatela.  Ex. 4 (LGL 2022/23 Annual Report) at 12-13; Ex. 5 (Laura G. Quatela LinkedIn Profile - https://www.linkedin.com/in/laura-g-quatela-2923242/ ); Ex. 6 (Kirk Skaugen LinkedIn

Profile - https://www.linkedin.com/in/kirkskaugen/).   At a minimum, this evidence creates a factual conflict regarding whether LGL shares its management level employees with its U.S.-based subsidiaries, which must be weighed in UCT's favor on a motion to dismiss.  *See AX Wireless*, 2023 WL 7105701, at *4 ("the evidence creates factual conflicts that LGL… shares executives and management teams with other entities to manufacture and distribute Accused Products in the United States.").

Ultimately, UCT has set forth facts and evidence to demonstrate that "[t]he Lenovo Group – including LGL and its subsidiaries… - is the established distribution channel for the [LGL] Accused Products throughout the United States, including Texas, which is one of the most populated States."  *Id.*  "Accordingly, LGL could foresee that the [LGL] Accused Products would be sold in Texas."  *Id.*

### 2.      There is a nexus between LGL's contacts and UCT's claim for patent infringement

"[T]here is a nexus between [LGL]'s minimum contacts and [UCT's] claims of patent infringement in this case."  *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-CV-00173-JRG, 2023 WL 6606722, at *7 (E.D. Tex. Oct. 6, 2023).  UCT alleges that "Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products (laptops, desktops, monitors, and docking stations) that support DisplayPort 1.2 or later, such as the Qreator 27 UHD Smart Crystal Sound Wireless Charging Monitor, ThinkCentre M75s Gen 2Small Form Factor Desktop, ThinkPad USB-C Dock Gen 2 Docking Station, and Legion 7 Gen 6 & 7 Gaming Laptop ('Accused Products'), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '905 Patent."  Compl. ¶ 15; *see also id.* at ¶¶ 26, 37, 48, 59, 70, 80, 90.  As discussed above, UCT has shown LGL's contacts with the United States, including through the distribution and sale of the

9

LGL Accused Products in Texas.  As such, there is a clear nexus between LGL's contacts with the forum and UCT's patent infringement claims based on the sale of the LGL Accused Products.  *See AX Wireless*, 2023 WL 7105701, at *4 ("AX Wireless has established a prima facie case that (1) LGL purposefully ships Accused Products into the forum state through an established distribution channel and (2) the cause of action for patent infringement is alleged to arise out of those activities.").

### 3.  Personal jurisdiction over LGL is reasonable and fair

To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies.  *Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (internal citations omitted). "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Nuance Commc'n, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2012) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The exercise of personal jurisdiction over LGL is reasonable and fair.  First, the burden on LGL to litigate in Texas is minimal because "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *World-Wide Volkswagen*, 444 U.S. at 294; *see also AX Wireless*, 2023 WL 7105701, at *5 ("While LGL may be slightly burdened by defending in a foreign forum, progress in communications and transportation have largely mitigated that burden to travel to the United States or Texas.").  Second, Texas has an

interest in enforcing federal patent laws and providing a forum for efficient resolution of patent infringement claims. *Id.* ("The second, third, and fourth factors favor jurisdiction because both Texas and the United States have an interest in enforcing federal patent laws and providing a forum for AX Wireless to efficiently pursue and resolve its patent infringement claims."). Third, UCT has an interest in obtaining relief for infringement of its patent rights. Fourth, like Texas, the United States also has an interest in enforcing federal patent laws and providing a forum for efficient resolution of patent infringement claims. *Id.* And fifth, both Texas and the United States have an interest in discouraging patent infringement. *Id.* ("The fifth factor also supports jurisdiction because Texas and the United States have an interest in discouraging patent infringement.").

Because UCT has established that LGL has sufficient minimum contacts with Texas for purposes of personal jurisdiction, LGL bears the burden of proving unreasonableness. LGL has not made that showing here. Accordingly, the Court should find that exercising personal jurisdiction over LGL would be reasonable and fair. *AX Wireless*, 2023 WL 7105701, at *5 ("exercising personal jurisdiction [over LGL] would not offend traditional notions of fair pla[y] and substantial justice."); *see also ACQIS*, 572 F. Supp. 3d at 297 ("this Court finds that the exercise of personal jurisdiction over LGL is both reasonable and fair.").

### 4.    LGL's Arguments Should be Rejected

LGL's arguments against exercising personal jurisdiction are unpersuasive. In essence, LGL argues that it should not be subject to personal jurisdiction in Texas because it is a holding company based in Hong Kong, it purportedly has no involvement in the business activities of its subsidiaries, it supposedly does not make or sell anything in the United States and Texas, and it contends it plays no role in putting the LGL Accused Products into the stream of commerce. Mot.

at 3, 7, 8, 14.  LGL's arguments, however, have already been considered, and rejected, by two courts in Texas.  *See AX Wireless*, 2023 WL 7105701, at *3-4; *ACQIS*, 572 F. Supp. 3d at 306-07.

LGL argues that "[b]y refraining from engaging in any contacts with Texas or the United States at all, LGL has purposefully chosen to structure its conduct such that it should not be rendered liable to suit in any venue in the United States" and that "[c]ourts regularly hold that a parent holding company is not subject to suit when the plaintiff's allegations are principally directed to the actions of a subsidiary."  Mot. at 8.  But as this Court recognized in *AX Wireless,* "[i]f allegations or evidence support personal jurisdiction, a foreign company need not itself sell the accused goods in the forum."  *AX Wireless*, 2023 WL 7105701, at *3.  "A foreign company also need not itself manufacture the accused goods."  *Id.*  And UCT was not required to include the U.S.-based subsidiaries in this action in order for this Court to exercise personal jurisdiction over LGL.  *See id.* ("a domestic distributor or manufacturer need not be a named defendant in the case for personal jurisdiction over the foreign defendant.").

LGL fails to meaningfully explain why the prior holdings in *AX Wireless* and *ACQIS* are not applicable here.  For example, LGL spends just two sentences attempting to distinguish *AX Wireless* stating that the Court "failed to credit clear evidence that LGL is a holding company that conducts no activity in Texas or elsewhere in the United States."  Mot. at 14-15.  Yet, as detailed above, the Court considered and rejected those very arguments.  *See AX Wireless*, 2023 WL 7105701, at *3-4.

In addition, LGL's attempt to distinguish *ACQIS* by conflating the stream-of-commerce theory with alter-ago/agency theories is unpersuasive.  Mot. at 12.  Notably, LGL does not address the applicability of the *ACQIS* Court's stream-of-commerce analysis, which is mirrored in *AX*

*Wireless* and in UCT's well-pleaded allegations. *ACQIS*, 572 F. Supp. 3d at 306 ("the Court agrees that LGL acts in consort with other defendants under a stream of commerce theory.").

The cases LGL relies on for its previously rejected arguments are readily distinguishable. For example, in *B/E Aerospace, Inc. v. Zodiac Aerospace*—the only Texas case cited by LGL— the evidence established that the two defendant holding companies "do not make or sell anything, much less the allegedly infringing [products; o]ther than ownership, [and] there is no credible evidence that the holding companies are involved in the allegedly infringing conduct." *B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299, at *5 (E.D. Tex. Nov. 30, 2018). Here, as explained *supra* in Section V.A.1, UCT has set forth facts sufficient to demonstrate that LGL operates at the head of the Lenovo Group, that LGL's U.S.-based subsidiaries are part of that group, and that together, LGL and its subsidiaries manufacture, sell, and distribute the LGL Accused Products in the United States and worldwide. Thus, in contrast to the facts in the *B/E Aerospace* case, UCT has alleged with detailed factual support that LGL *is* involved in the allegedly infringing conduct.[1]

---

[1] LGL's other cases are likewise inapposite. For example, LGL cites *CAO Lighting, Inc. v. Signify N.V.* for its finding that "Plaintiff does not establish that Defendant [a holding company] itself places any product in the stream of commerce." Mot. at 9 (citing 628 F. Supp. 3d 996, 1004 (C.D. Cal. 2022)). Unlike in the present case, the plaintiff in *CAO Lighting* failed to demonstrate that the defendant substantially contributed to the placement of the accused products in the stream of commerce because plaintiff did not show that the defendant controlled its subsidiaries. Notably, however, the court in *CAO Lighting* recognized that "the stream of commerce theory can nevertheless apply to a nonmanufacturing parent company when it significantly contributes to the placement of the product in the stream of commerce." 628 F. Supp. 3d at 1001. LGL also relies on *Quimby ex rel. Faure v. Cmty. Health Sys., Inc.* and *Androphy v. Smith & Nephew, Inc.* Mot. at 9. *Quimby* is readily distinguishable because it is not related to patent infringement. *Quimby ex rel. Faure v. Cmty. Health Sys., Inc.*, No. 14-cv-559, 2015 WL 13651236, at *1 (D.N.M. Sept. 22, 2015). *Androphy* is also readily distinguishable because in that case, the court found that the parent entity and its subsidiary were entirely separate. *See Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 622 (N.D. Ill. 1998).

LGL's further attempts to distance itself from the actions of its U.S.-based subsidiaries by arguing that they are not agents or alter egos of LGL likewise fail.  Mot. at Section IV.B.2.  As an initial matter, the Court need not address whether personal jurisdiction exists based on agency or alter ego theory here because the stream of commerce theory, on its own, is sufficient to establish personal jurisdiction (as explained above) or pursuant to Fed. R. Civ. P. 4(k)(2) (detailed below). In any event, LGL's agency arguments should be rejected for at least the following reasons.  First, UCT has pled facts that are sufficient to establish that LGL's subsidiaries commit allegedly infringing acts in Texas with respect to the LGL Accused Products.  *See supra* at Section V.A.1. Further, UCT has pled facts that are sufficient to establish that LGL maintains control of its U.S.-based subsidiaries.  For example, the Complaint sets forth that "[a]t the direction and control of Lenovo, U.S.-based subsidiaries (including but not limited to Lenovo US and Lenovo Tech.) make, use, import, offer to sell, and/or sell Lenovo-branded laptops, desktops, monitors, docking stations, and adapters that infringe the Asserted Patents, including in the State of Texas and this District." Compl. ¶ 8.  As explained *supra*, Lenovo U.S. and Lenovo Tech. are wholly-owned subsidiaries of LGL.  Throughout LGL's 2022/23 Annual Report, LGL repeatedly refers to itself and its subsidiaries collectively as "Lenovo," "the Company," and/or "the Group," and fails to distinguish its activities from its subsidiaries.  *See, e.g.*, Ex. 4 (LGL 2022/23 Annual Report) at 61; *see also id.* at 1, 16, 35.  Further, LGL fully owns its U.S.-based subsidiaries, including Lenovo U.S.  *See* Ex. 4 (LGL 2022/23 Annual Report) at 279, 281 (listing its 2023 "percentage of issued share capital held" for Lenovo U.S. ("Lenovo (United States) Inc.") and Lenovo Tech. ("Lenovo Global Technology (United States) Inc.") as 100% and refers to them as its "principal subsidiaries").  For all of these reasons, LGL's U.S.-based subsidiaries are agents or alter egos of LGL.

In addition, LGL relies on the Chim Declaration (Dkt. No. 18-1) to argue that there is not personal jurisdiction under an agency or alter ego theory.  Mot. at 9.  However, in *AX Wireless*, the Court already considered a Declaration from Mr. Chim that was nearly identical in substance to the one submitted here.  *Compare* Dkt. No. 18-1 *with* Case No. 2:22-cv-00280, Dkt. 35-7.  LGL's reliance on the factual assertions made in the Chim Declaration should be rejected "to the extent that Mr. [Chim]'s declaration conflicts with well-pleaded allegations in the FAC" because "the Court must view the well-pleaded allegations in the light most favorable to [UCT]."  *Stingray IP Sols., LLC v. Signify N.V.*, No. 2:21-cv-00044-JRG, 2021 WL 9095764, at \*4 (E.D. Tex. Oct. 25, 2021).  And, here, numerous statements made in the Chim Declaration are directly contradicted by LGL's own statements in publicly available documentation.  For example, citing to the Chim Declaration, LGL asserts that "LGL exercises no control over [its subsidiaries]."  Mot. at 11.  But LGL's 2022/23 Annual Report tells a different story, namely that (1) Lenovo U.S. is a wholly owned subsidiary of LGL, (2) the board of directors of LGL controls the entire Lenovo family, including Lenovo U.S., and (3) the corporate officers have dual roles in both LGL and its subsidiaries.  *See* Ex. 4 (LGL 2022/23 Annual Report) at 8-13, 61, 80, 279, 281.

Finally, LGL's contention that the *3G Licensing* decision "is on all fours with respect to the agency theory of personal jurisdiction" is unavailing.  Mot. at 11.  *3G Licensing* is readily distinguishable.  Indeed, LGL extensively cited to the *3G Licensing* decision in its *AX Wireless* briefing, yet Judge Payne clearly did not agree with its applicability in denying LGL's motion.  *See* No. 22-cv-00280, Dkt. No 35 at 2, 10-11, 14-15.  Notably, the court in *3G Licensing* did not consider all of the same evidence relied on by UCT in this case—such as LGL's 2022/23 Annual Report which demonstrates that LGL is at the head of the Lenovo Group, that LGL represents itself as a "global technology powerhouse," and that LGL pays benefits to U.S.-based employees.

*See supra* at Section V.A.1.  In addition, UCT relies on LGL's website, and the responsibilities, locations, and LinkedIn profiles of LGL's U.S.-based management team members. *Supra* at Section V.A.1.  As such, this case is simply not analogous to the *3G Licensing* case.[2]

### B.      In The Alternative, The Court Has Personal Jurisdiction Under Rule 4(k)(2)

If the Court finds that LGL does not have sufficient minimum contacts with Texas, then this Court may exercise personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) because at the very least, LGL has sufficient contacts with the United States as a whole.  Federal Rule of Civil Procedure 4(k)(2) states:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).  Rule 4(k)(2) "corrects for a gap in the enforcement of federal law" and allows for courts to exercise personal jurisdiction over defendants with sufficient contacts with the United States generally, but insufficient contacts with any one particular state.  *See* Advisory Committee Notes to F.R.C.P. 4(k)(2); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (Justice Kennedy's plurality opinion noting "the United States is a distinct sovereign," so defendants may be subject to the jurisdiction of federal courts even if no state may exercise personal jurisdiction).

To demonstrate that a court may exercise personal jurisdiction under Rule 4(k)(2), it must be shown that (1) "the plaintiff's claim must arise under federal law," (2) "the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction," and (3) "exercise of

---

[2] LGL's reliance on the *Theta IP* decision is also inapposite.  Mot. at 11-12.  That case from the Northern District of Illinois was decided after *ACQIS* and *AX Wireless*, did not discuss or analyze those cases, and was not concerned with LGL's contacts with the State of Texas.  *See Theta IP, LLC v. Motorola Mobility LLC*, No. 1:22-cv-3441, Dkt. No. 94 (N.D. Ill. Mar. 25, 2024).

jurisdiction must comport with due process." *Touchcom v. Bereskin & Parr*, 574 F.3d 1403, 1412 (Fed. Cir. 2009).  The first prong is satisfied because this is a patent infringement case that arises under federal law.  The second prong is satisfied because LGL does not assert it is subject to personal jurisdiction anywhere in the United States.  Mot. at 3 (arguing that "LGL conducts no activities in or directed to this forum or even in the United States at all.").  The third prong is satisfied for the reasons described *supra* in Section V.A.2.  In addition, in *AX Wireless*, Judge Payne found that Rule 4(k)(2) was applicable to LGL, and LGL provides no basis for a contrary finding here. *AX Wireless*, 2023 WL 7105701, at *4 ("Alternatively, Federal Rule of Civil Procedure 4(k)(2) is applicable.").

To the extent the Court determines that LGL does not have sufficient minimum contacts with Texas, the Court should nevertheless find that it has personal jurisdiction over LGL because UCT has set forth facts demonstrating that LGL delivers its infringing products into the stream of commerce with the expectation that they will be purchased in the United States generally.

### C.      The Court Should Grant Leave to Amend

To the extent the Court finds any deficiencies with UCT's pleadings, UCT requests leave to amend its Complaint to address such deficiencies.  "[I]n the absence of any apparent reason (e.g., undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, futility), leave to amend should be freely given, as Rule 15 requires." *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co*., 916 F.3d 1350, 1362 (Fed. Cir. 2019); *see Thomas v. Chevron U.S.A., Inc*., 832 F.3d 586, 590 (5th Cir. 2016).  There is no reason to depart from Rule 15's liberal standard here. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, No. 6:14-cv-752-JRG-JDL, 2015 WL 4910427, at *1 (E.D. Tex. Aug. 14, 2015) (granting leave); *see also Ultravision Techs.*, 2020 WL 1158606 (E.D. Tex. Mar.

9, 2020) (citing Fed. R. Civ. P. 15 (a)(2)) (noting that granting leave would be proper to cure alleged deficiencies in the complaint related to personal jurisdiction issues).

## VI.    CONCLUSION

For at least the reasons stated above, LGL's Motion to Dismiss should be denied.  In the alternative, and to the extent that the Court determines UCT's Complaint is deficient, UCT requests that the Court grant UCT leave to amend its Complaint to address such deficiencies.


Dated: June 7, 2024

<div style="margin-left:40%">

Respectfully submitted,

By: */s/ Brett E. Cooper*
Brett E. Cooper (NY SBN 4011011)
bcooper@bclgpc.com
Seth Hasenour (TX SBN 24059910)
shasenour@bclgpc.com
Jonathan Yim (TX SBN 24066317)
jyim@bclgpc.com
Drew B. Hollander (NY SBN 5378096)
dhollander@bclgpc.com
Ashley M. Ratycz (IL SBN 6330321)
aratycz@bclgpc.com

**BC LAW GROUP, P.C.**
200 Madison Avenue, 24th Floor
New York, NY 10016
Tel.: (212) 951-0100
Fax: (646) 293-2201

***Attorneys for Plaintiff Universal Connectivity Technologies Inc.***

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served via electronic service on

June 7, 2024.

/s/ Brett E. Cooper
Brett E. Cooper