# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

UNIVERSAL CONNECTIVITY
TECHNOLOGIES INC.,

                         Plaintiff,                          Case No. 2:23-cv-00449-JRG

v.

LENOVO GROUP LIMITED.

                         Defendant.

## DEFENDANT LENOVO GROUP LIMITED'S
## OPPOSITION TO PLAINTIFF UNIVERSAL CONNECTIVITY
## <u>TECHNOLOGIES INC.'S MOTION TO COMPEL DISCOVERY</u>

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

III.   ARGUMENT ...................................................................................................... 5

    A.   The Requested Information and Documents Are Not in LGL's Possession,
         Custody, or Control.......................................................................................... 5

    B.   Technical Information Is Mainly in the Possession of Third-Party Suppliers ................ 7

IV.    CONCLUSION.................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
No. 17-cv-84-LPS, 2019 WL 3974539 (D. Del. Aug. 22, 2019)............................................ 3, 6

*ECB USA, Inc. v. Savencia, S.A.*,
No. 19-cv-731, 2024 U.S. Dist. LEXIS 121833 (D. Del. July 11, 2024) ................................. 6

*Hobson v. Mattis*,
No. 3:14-cv-01540, 2017 WL 11475404 (M.D. Tenn. Sept. 11, 2017) .................................... 4

*Kamatani v. BenQ Corp.*,
No. 2:03-cv-437, 2005 WL 2455825 (E.D. Tex. Oct. 6, 2005) ................................................ 6

*MacDermid, Inc. v. Selle*,
No. 3:07-cv-1566, 2008 WL 11381507 (D. Conn. July 17, 2008) ........................................... 6

*Sicav v. Wang*,
No. 12-cv-6682, 2014 WL 2624753 (S.D.N.Y. June 12, 2014) ............................................... 6

*Theta IP, LLC v. Motorola Mobility LLC*,
No. 22-cv-3441 (N.D. Ill. Mar. 25, 2024)............................................................................ 3, 6

*Ultravision Technologies, LLC v. Govision, LLC*,
No. 2:18-cv-100-JRG-RSP (E.D. Tex. July 18, 2020) ............................................................ 7

**Rules**

Fed. R. Civ. P. 34 ..................................................................................................................... 5, 6

ii

## I.      INTRODUCTION

This is no routine discovery dispute.  At the core lies the following question:  can a plaintiff consciously decline to sue the correct party because the plaintiff knows there is no jurisdiction over that party, yet wield the Court's power to force the named defendant to provide discovery from the omitted party as a related corporate entity, even where the defendant does not have the ability to do so?[1]

As a matter of law, policy, and case management, the answer should be no.  Any contrary result would eviscerate long-standing law respecting corporate forms (unless pierced, which the plaintiff here has not), and lead to a result that would render the fundamental rules of jurisdiction meaningless.  The plaintiff would continue to conduct the case as though the omitted party were actually in the case, jurisdiction be damned, demanding discovery from the unnamed party on whatever issue it wanted, whenever.  Today, it might be technical documents; tomorrow, it might be marketing information; next week, it might be deposition testimony.  This haphazard approach will create problems.  For example, were the plaintiff to prevail, what would the measure of damages be from a party that has no role in the allegedly infringing activity?  Why should the Court and the parties commit substantial resources to litigating a case that can only lead to that pyrrhic result?  Here, these thorny questions are compounded by a plaintiff trying to compel production from a defendant which itself also is not subject to personal jurisdiction in this Court, and indisputably is uninvolved in any allegedly infringing activity.  *See* Dkt. Nos. 18, 28.

The remedy for all this is a straightforward application of civil procedure—sue the party conducting the accused activity, in a court where that party is subject to jurisdiction.  The plaintiff

---

[1]   In this case, the omitted party is Lenovo (United States) Inc. ("Lenovo (US)"), the related corporate entity is Defendant Lenovo Group Limited ("LGL"), and the Plaintiff is, of course, Universal Connectivity Technologies Inc. ("UCT").

has studiously avoided doing just that, and even refuses the most straightforward remedy; that is, to simply subpoena the knowledgeable party.  The plaintiff steadfastly refuses to do so, even though it would have obtained the information faster than motion practice and would have avoided burdening the Court with this dispute, because subpoenaing the correct party would be an implicit recognition that it sued the wrong party in the wrong forum.

The discovery issue here is uncomplicated.  UCT accuses third-party USB, DisplayPort, and PCIe components in Lenovo-branded products of patent infringement.  The defendant is well-aware of the Court's rules on disclosure regarding accused activity and does not dispute that the plaintiff is entitled to this information.  However, this discovery should come from the ***correct party possessing custodial control*** over the information.  As LGL made clear in its motion to dismiss (Dkt. No. 18), LGL is a holding company.  It does not make or sell anything, nor does it exercise control over the subsidiaries or suppliers that are responsible for the activities accused in this lawsuit.  UCT complains that LGL has not substantively responded to its interrogatories, but the simple fact is that LGL—the only named defendant in this case—has given over what information it has.  Likewise, LGL is not in possession, custody, or control of non-public documents regarding the functionality of the accused products.  Recognizing this, LGL took the voluntary step of requesting Lenovo (US) to informally provide the documents and information in its possession for production, a request Lenovo (US) declined.  Finally, it is no surprise to UCT that much of this information is in the possession of LGL's U.S.-based subsidiaries and those subsidiaries' third-party suppliers.  In fact, UCT has already served subpoenas on several of those suppliers, also seeking documents related to the accused functionalities.

In short, LGL cannot disclose information or produce documents that it does not have, and UCT's motion should be denied as a result—and in particular as to interrogatories 6-10, for which

this dispute is not ripe.  UCT should subpoena Lenovo (US) for the information it desires.

## II.    BACKGROUND

As LGL explained in its motion to dismiss, UCT has simply sued the wrong entity.  Dkt. No. 18 at 2–4.  The entity responsible for the conduct UCT accuses is Lenovo (US), which is a subsidiary of LGL.  *Id.*  But UCT knows that Lenovo US is not subject to the jurisdiction of this Court (nor would venue be proper), so UCT has instead brought suit against LGL, a foreign holding company.  This discovery dispute is a natural consequence of that choice.

LGL is a Hong Kong-based holding company that does not make or sell anything, let alone the products accused in this case.  *Id.*  The Lenovo-branded products at issue are imported into and sold in the United States by Lenovo US, which purchases the products from another LGL subsidiary, Lenovo PC HK.  Dkt. No. 18-1 ¶ 6.  LGL is not involved in the daily business activities and decisions of Lenovo US, and is not involved in any manufacturing, sales, advertising, or marketing activities for Lenovo US.  *Id.* ¶ 7.  Recognizing this distinction, multiple courts have declined to hold that LGL exercises control over its subsidiaries, including Lenovo US.  *Theta IP, LLC v. Motorola Mobility LLC*, No. 22-cv-3441, Dkt. No. 94 at 10, 13 (N.D. Ill. Mar. 25, 2024); *see also 3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. 17-cv-84-LPS, 2019 WL 3974539, at *7–8 (D. Del. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 7635823 (D. Del. Sept. 19, 2019).

On July 24, 2024, LGL complied with P.R. 3-4, which requires, *inter alia*, the production of materials "sufficient to show the operation of any aspects of elements of an Accused Instrumentality."  P.R. 3-4(a).  As UCT is well aware, much of that information is in the possession of third-party suppliers, such as AMD, MediaTek, and NVIDIA, on whom UCT has already served subpoenas.  Moreover, even if one of LGL's subsidiaries had that information, it is not in the possession, custody, or control of LGL, which is not involved in the development, manufacturing,

3

distribution, or marketing of the accused products.  Nevertheless, LGL compiled and produced over 2,000 public documents regarding the accused Lenovo-branded products—information that LGL was under no obligation to produce.  *See, e.g.*, *Hobson v. Mattis*, No. 3:14-cv-01540, 2017 WL 11475404, at *7 (M.D. Tenn. Sept. 11, 2017) ("Several courts . . . have recognized that there is no discovery obligation to produce documents in the public record that are equally available to both parties.").  Those documents include information relevant to the issues in the case, such as the processors and graphics cards used by the accused products, and the standards with which the accused products are compatible.

On July 29, 2024, LGL responded to UCT's first set of interrogatories.  As LGL explained in its responses, LGL is not in possession, custody, or control of information responsive to interrogatories 1–5, which relate to technical component-level information about the products accused in this case.  Dkt. No. 34-3 at 1–2, 11–17.  Likewise, LGL is not in possession, custody, or control of the requested information regarding sales of the accused products, or any studies, surveys, or assessments regarding those products.[2]  *Id.* at 18–19, 23.  LGL, however, did point UCT to public websites which may contain at least some of the information that UCT seeks.  *Id.* at 11–17.

On August 1, 2024, the parties had an initial meet-and-confer regarding LGL's discovery responses.  Although UCT now argues that all ten of LGL's interrogatory responses were deficient, Dkt. No. 34 at 1, 7, the parties' discussions during the meet-and-confer focused on interrogatories

---

[2]  UCT suggests in a footnote that LGL's alleged control over Lenovo US "is further confirmed by" LGL's financial statements.  Dkt. No. 34 at 7 n.2.  Since LGL is the owner of Lenovo US, it is unsurprising that LGL has access to high-level financial data of its subsidiaries for financial reporting purposes.  What LGL does not have access to is granular sales data (for example, organized by product) as requested in interrogatory number 6.  Simply because LGL receives *some* information from its subsidiary does not mean that it controls all of the information possessed and controlled by that subsidiary.

1–5 and the P.R. 3-4 production.  Decl. ¶ 3.   In fact, when asked during the meet-and-confer if they would like to discuss interrogatories 6–10, UCT declined to do so.  *Id.* ¶ 4.   Accordingly, any request to compel a response to interrogatories 6-10 is not ripe and would be inconsistent with the Court's meet-and-confer requirement.  In any event, LGL explained that the most efficient way for UCT to obtain the information it seeks would be to serve a subpoena on Lenovo US, who would likely possess much of the information requested.  *Id.* ¶ 6.  UCT quickly dismissed the possibility of seeking information from Lenovo US via subpoena, and instead insisted on moving forward with its motion.  *Id.* ¶ 7.  Given UCT's refusal to properly seek the discovery, LGL requested that Lenovo US provide the requested documents and information, and Lenovo US declined.  *Id.* ¶ 8.

During the meet-and-confer, LGL did ***not***, as UCT asserts in its brief, refuse to "provide the technical documents or provide fulsome answers to UCT's interrogatories" unless the Court denied LGL's motion to dismiss and found that LGL maintains control over its U.S.-based subsidiaries.  Dkt. No. 34 at 3; Decl. ¶ 9.  Instead, LGL explained, as it did in the motion to dismiss, that LGL does not exercise control over its subsidiaries and, therefore, documents in the possession of LGL's subsidiaries are not in the possession, custody, or control of LGL.  *Id.* ¶ 10.  LGL acknowledged, however, that if the Court were to deny LGL's motion to dismiss on the basis that LGL exercises control over its subsidiaries, it would be difficult for LGL to maintain that same position during discovery and would have to seek discovery from its subsidiaries.  *Id.*

## III.   ARGUMENT

### A.   The Requested Information and Documents Are Not in LGL's Possession, Custody, or Control

The Federal Rules of Civil Procedure limit the scope of permissible discovery to documents or information that is within a party's "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).

The information UCT seeks is likely in the possession of Lenovo US, whom UCT could have sued but did not.  UCT instead sued LGL, but UCT has provided *no evidence*—other than the same conclusory statements that it relied on with respect to LGL's motion to dismiss—that LGL has sufficient possession, custody, or control over the documents of its subsidiaries.  *See* Dkt. No. 34 at 6; *cf.* Dkt. No. 23 at 5–7.  Effectively, UCT argues that because LGL wholly owns Lenovo US, LGL must *ipso facto* have control over the information in Lenovo US's possession.  Not so.

As various courts have held, the fact that a party wholly owns its subsidiary is not dispositive in the "possession, custody, or control" inquiry under Rule 34.  *See, e.g.*, *Sicav v. Wang*, No. 12-cv-6682, 2014 WL 2624753, at *5 (S.D.N.Y. June 12, 2014) ("Mere ownership by a parent, however, is not a decisive factor, but merely one factor among several."); *ECB USA, Inc. v. Savencia, S.A.*, No. 19-cv-731, 2024 U.S. Dist. LEXIS 121833, at *7 (D. Del. July 11, 2024) (denying discovery of subsidiary documents because "the only evidence" of control was "that [the defendant] is the parent corporation of those subsidiaries"); *MacDermid, Inc. v. Selle*, No. 3:07-cv-1566, 2008 WL 11381507, at *6 (D. Conn. July 17, 2008) (finding that parent company "does not exercise actual 'control' over these or other subsidiaries.").  As in those cases, UCT has not shown here that LGL has sufficient control over its subsidiaries to require production of those subsidiaries' documents and information under Rule 34.  *See also Theta IP*, Dkt. No. 94 at 10, 13; *3G Licensing*, 2019 WL 3974539, at *7–8.  Indeed, LGL requested that Lenovo US produce the requested documents and information, and Lenovo US declined to do so.  Decl. ¶ 8.

UCT's cited authority does not change that basic fact.  In *Kamatani v. BenQ Corp.*, the court explained that "documents are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the suit."  No. 2:03-cv-437, 2005 WL 2455825, at *5 (E.D. Tex. Oct. 6, 2005).  LGL does not

dispute that general standard; rather, LGL takes issue because it does *not* have the right, authority, and practical ability to obtain the requested documents from Lenovo US or other subsidiaries.  And in *Ultravision Technologies, LLC v. Govision, LLC*, the court found that even though the defendant had "an ownership affiliation" with a third party, there was no evidence "establishing that [the defendant] has the right of control over the requested documents."  No. 2:18-cv-100-JRG-RSP, D.I. 317 at 4 (E.D. Tex. July 18, 2020).  Likewise here, there is no evidence that LGL has the right of control over documents in the possession of Lenovo US.  In such a circumstance, the recourse for LGL to obtain this discovery is the same as for UCT—to subpoena the appropriate entity under Rule 45 just as UCT has already subpoenaed the third-party suppliers in this case.

### B.    Technical Information Is Mainly in the Possession of Third-Party Suppliers

UCT also spends considerable space arguing that LGL's P.R. 3-4 production, which is complete, did not provide information "describ[ing] the operation of any accused product," such as source code.  Dkt. No. 34 at 5.  UCT is entitled to that information, but LGL does not have it.  UCT's infringement allegations are directed to the compatibility of Lenovo-branded devices with certain communication standards, including DisplayPort and USB.  *See, e.g.*, Dkt. Nos. 1-3, 1-7, 1-9, 1-11, 1-13, 1-15, 1-17, 1-19.  Those standards are implemented through components such as processors and controllers that are manufactured by unaffiliated third parties and are later purchased and incorporated into Lenovo-branded products.  To the extent that materials such as "source code, specifications, schematics," and similar documents exist for those components, *see* P.R. 3-4(a), they are in the possession of the third-party suppliers.  UCT undoubtedly recognizes this, as it has already served subpoenas on several of those suppliers.  Simply put, LGL or any Lenovo entity for that matter cannot produce or provide information that it does not have.

### IV.    CONCLUSION

In conclusion, UCT's motion to compel discovery should be denied.

Dated: August 27, 2024

Respectfully Submitted,

*/s/ Melissa R. Smith*
Indranil Mukerji
MA Bar No. 644059
imukerji@willkie.com
Stephen Marshall
DC Bar No. 1012870
smarshall@willkie.com
Aliza George Carrano
DC Bar No. 995661
acarrano@willkie.com
Dane Sowers
TX Bar No. 24126820
dsowers@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendant Lenovo Group Limited*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 27th day of August 2024.

*/s/ Melissa R. Smith*