IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., § § § *Plaintiff,* § § v. § § LENOVO GROUP LIMITED, § § *Defendant.* § § | CIVIL ACTION NO. 2:23-CV-00449-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Lenovo Group Limited's ("LGL") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"). (Dkt. No. 18.) Having considered the Motion, the subsequent briefing, and for the reasons stated herein, the Court finds that the Motion should be **DENIED**.

### I. BACKGROUND

Plaintiff Universal Connectivity Technologies Inc. ("UCT") filed suit on September 28, 2023, alleging that LGL infringes eight United States patents. (Dkt. No. 1 ¶ 1.) UCT asserts that some of LGL's Lenovo-branded laptops, desktops, monitors, and docking stations infringe the asserted patents. (*Id.* ¶ 15.) LGL is a Chinese company with its principal place of business in Hong Kong. (Dkt. No. 1 ¶ 3; Dkt. No. 18 at 3, 5.) Lenovo (United States) Inc. ("Lenovo US") and Lenovo Global Technology (United States) Inc. ("Lenovo Tech.") are wholly owned subsidiaries of LGL. (Dkt. No. 1 ¶¶ 5-7; *see also* Dkt. No. 18 at 3.) Lenovo US and Lenovo Tech are headquartered in Morrisville, North Carolina. (Dkt. No. 1 ¶¶ 5-7.)

LGL moves to dismiss UCT's Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

## II. LEGAL STANDARD

### A. Specific Personal Jurisdiction

"Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019). Where a claim involves substantive questions of patent law, the Court applies Federal Circuit law to evaluate personal jurisdiction. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). However, the Fifth Circuit relies on the same analysis as the Federal Circuit in deciding whether personal jurisdiction exists. *Packless Metal Hose, Inc. v. Extek Energy Equip. (Zhejiang) Co.*, 2011 WL 504048, at *1 n.1 (E.D. Tex. Feb. 10, 2011).

Personal jurisdiction exists over a defendant where a forum state's long-arm statute permits service of process and where assertion of personal jurisdiction does not violate due process. *NexLearn*, 859 F.3d at 1375. Due to Texas's long-arm statute being "coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Upon a showing of minimum contacts, the

defendant bears the burden to prove unreasonableness. *Id.* In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The minimum contacts test is satisfied if a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). The existence of an "established distribution channel into the forum" is a "significant factor" when evaluating the strength of a non-movant's stream of commerce theory. *See id.* at 1565 n.15. The Supreme Court has, however, introduced a split of authority as to what is required to establish minimum contacts under a stream of commerce theory. The Federal Circuit has repeatedly refused to endorse either articulation of the stream of commerce theory. *See, e.g., id.* at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364. The Federal Circuit has explained that defendants fall under the stream of commerce theory where "defendants, *acting in consort*, placed the accused [product] in the stream of commerce, they knew the likely

destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566 (emphasis added).

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "To make that showing, [the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

### B. Personal Jurisdiction Under Rule 4(k)(2)

Personal jurisdiction may exist under Rule 4(k)(2) where "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). A court may exercise jurisdiction under Rule 4(k)(2) if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Come de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)). The three-step due process analysis under specific jurisdiction and Rule 4(k)(2) are similar. *Id.* However, Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* (quoting *Synthes*, 563 F.3d at 1295).

## III. DISCUSSION

### A. Specific Jurisdiction[1]

#### 1. LGL has Sufficient Minimum Contacts with Texas

LGL argues that the Court lacks personal jurisdiction because LGL does not direct any activities at Texas. (Dkt. No. 18 at 6.) LGL argues that it is merely a holding company that does not place anything into the stream of commerce. (*Id.* at 7-9.) LGL further argues that it does not control its subsidiaries' activities concerning the accused products. (*Id.* at 8-10.) LGL contends that its actions are typical of a parent holding company that oversees the strategy of its subsidiaries. (*Id.* at 7-10.) LGL argues that the Court should not depart from controlling law rejecting personal jurisdiction over a parent company based on actions of subsidiaries because "corporate formalities are not mere niceties that can be ignored in the personal jurisdiction analysis." (Dkt. No. 28 at 5; *see also* Dkt. No. 18 at 8-9.)

In support of its Motion, LGL attached a declaration from Adrian Chim, Director of Group Financial Reporting and Accounting Policy at Lenovo Hong Kong Services Limited (the "Chim Declaration"). (Dkt. No. 18-1.) The Chim Declaration states that LGL is a holding company that "does not itself manufacture, sell, offer for sale, export, import, or otherwise distribute any Lenovo-branded products" and does not "itself distribute any Lenovo-branded products through established distribution channels." (Dkt. No. 18-1 ¶ 3.) The Chim Declaration admits that Lenovo US, LGL's wholly owned subsidiary, "is the entity responsible for selling Lenovo-branded products in the United States." (*Id.* ¶ 6.) LGL contends that UCT's allegations that LGL controls its subsidiaries' activities concerning the accused products are "entirely conclusory and . . . contradicted by the Chim Declaration." (Dkt. No. 18 at 9.)

---

[1] Here, general jurisdiction is not at issue. Therefore, the Court's analysis is limited to whether LGL is subject to specific jurisdiction in Texas.

UCT counters in its response that the Complaint contains specific allegations that LGL's subsidiaries manufacture and/or import LGL products into the United States, including Texas. (Dkt. No. 23 at 5-6 (citing Dkt. No. 1 ¶¶ 3-4, 9).) UCT alleges that LGL uses its subsidiaries, including Lenovo US and Lenovo Tech, to "make, use, import, offer to sell, and/or sell the LGL Accused Products in the United States and specifically in Texas . . . ." (*Id.* (citing Dkt. No. 1 ¶ 8).) UCT asserts that Lenovo US and Lenovo Tech are registered to do business in Texas. (*Id.* (citing Dkt. No. 1 ¶¶ 6-7).) UCT presents evidence that LGL portrays itself and its subsidiaries as a single company. (Dkt. No. 31 at 2 (citing Dkt. No. 31-2).) UCT presents additional evidence that a factual conflict exists concerning whether LGL shares its management-level employees with its US-based subsidiaries. (Dkt. No. 23 at 8-9.) Further, UCT identified locations of authorized sellers and sales representatives that sell, or at least offer for sale, the accused products in Texas. (*Id.* at 7 (citing Dkt. No. 1 ¶ 4).)

Viewing UCT's allegations as true and the factual conflicts in UCT's favor, the Court finds that UCT has made a *prima facie* showing of specific jurisdiction in Texas. UCT's Complaint alleges that LGL at least acts in concert with its wholly owned subsidiaries to deliver the accused products into the Texas market under a stream of commerce theory. UCT alleges that LGL's distribution channel—comprising its wholly owned subsidiaries—is arranged in a way that LGL "knew, or reasonably could have foreseen, that a termination point of the channel" was Texas. *Beverly Hills*, 21 F.3d at 1564. LGL's status as a holding company does not remove it from this Court's personal jurisdiction. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir. 2018).

LGL attempts to use the Chim Declaration to detach LGL from its subsidiaries. (*See generally* Dkt. 18-1.) However, the Chim Declaration fails to rebut all UCT's allegations and

6

supporting evidence. For example, Mr. Chim is the Director of Group Financial Reporting and Accounting Policy at Lenovo Hong Kong Services Limited, not LGL. (Dkt. No. 18-1 ¶ 1.) The fact that Mr. Chim opines on the relationship between LGL and its subsidiaries as an employee of an LGL subsidiary indicates that there is at least some degree of lack of separateness between LGL and its subsidiaries. As another example, the Chim Declaration contends that LGL has no employees or place of business in the United States. (Dkt. No. 18-1 ¶ 3.) However, UCT presents evidence that LGL has employees living and working in the United States, including in Texas. (Dkt. No. 23 at 8-9.) To the extent the Chim Declaration conflicts with well-pleaded allegations in the Complaint, the Court must view the well-pleaded allegations in the light most favorable to UCT. *See Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (courts "must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party").

Throughout its Motion, LGL argues that courts in other districts have already addressed the issue of personal jurisdiction over LGL, holding that LGL is not subject to personal jurisdiction in those districts under either an agency or stream of commerce theory. (*E.g.*, Dkt. No. 18 at 7.) However, the Court does not find those authorities persuasive in this case. Here, as discussed above, there are open factual disputes as to whether LGL created, controls, or directs its subsidiaries to place the allegedly infringing products into the stream of commerce in Texas.

Instead, the Court finds the decisions of other Texas district courts, including another court in this district, more persuasive. In those cases, the courts found jurisdiction over LGL based on its conduct related to some of the same accused products and based on similar evidence and reasoning. *See AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023), *report and recommendation adopted*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 (E.D. Tex. Sept. 26, 2023) and *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp.

3d 291 (W.D. Tex. 2021). In both those cases, this district and the Western District of Texas rejected many of the same arguments that LGL presents here. This district found to that the plaintiff made a *prima facie* showing of personal jurisdiction under a stream of commerce theory by acting in consort with its subsidiaries to deliver the accused products into the United States market, including Texas. *AX Wireless*, 2023 WL 7105701, at *3-5 (Magistrate Payne recommending denying the defendant's motion to dismiss because the plaintiff established a *prima facie* case under a stream of commerce theory); *see also AX Wireless*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 at 6-10 (Judge Schroeder adopting Judge Payne's recommendation).[2] The Western District of Texas also found that there was sufficient evidence to support personal jurisdiction over LGL based on LGL's contacts and purposeful availment under a stream of commerce theory. *ACQIS*, 572 F. Supp. 3d, 306.[3]

LGL chose to conduct business in Texas through its subsidiaries. LGL uses its multi-level corporate structure to place the accused products into the stream of commerce—resulting in the accused products being sold or offered for sale in Texas. LGL cannot now claim a due process violation when Texas courts exercise jurisdiction over it for claims arising from or relating to these sales.[4]

    **2.    UCT's Claims Arise from or Relate to LGL's Texas Contacts**

LGL argues that UCT's claims do not arise out of or relate to LGL's Texas contacts because LGL does not direct any activities at Texas. (Dkt. No. 18 at 7-8.) UCT's infringement claims arise from LGL "making, using, offering for sale, selling and/or importing into the United States the

---

[2] In the alternative, Magistrate Payne also found personal jurisdiction proper under Rule 4(k)(2).
[3] The Western District of Texas also found that, in the alternative, the purposeful contacts by the other defendants—LGL subsidiaries, including Lenovo US—are imputable to LGL. *Id.* at 306-07.
[4] Because the Court finds personal jurisdiction under the stream of commerce theory proper, the Court need not address UCT's other theories, including whether the Court can properly impute the contacts from LGL's subsidiaries to LGL because they serve as LGL's distribution agents.

Accused Products." (*E.g.*, Dkt. No. 1 ¶¶ 11, 12, 20, 31, 42, 53, 64, 74, 84, 94.) LGL, directly or indirectly, places the accused products into the stream of commerce throughout the United States, including Texas. Accordingly, UCT's claims for patent infringement arise from or relate to LGL's contacts with Texas.

### 3. The Exercise of Jurisdiction is Reasonable and Fair

To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (citing *Burger King*, 471 U.S. at 476-77). "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Nuance*, 626 F.3d at 1231 (citing *Burger King*, 471 U.S. at 477).

Under the first factor, LGL argues that "requiring LGL to litigate in Texas would be severe and unreasonable" because LGL is a holding company, does not conduct business in Texas, and is headquartered in Hong Kong. (Dkt. No. 18 at 16.) As to the remaining factors, LGL argues that Texas has no interest in resolving the present dispute because neither party has any Texas ties.[5] (Dkt. No. 18 at 17.) LGL also contends that exercising jurisdiction would not result in efficiency and no interest would be served because UCT's claims are not viable. (*Id.*)

---

[5] LGL also argues that UCT's allegations are directed at Lenovo US, who is properly subject to suit in other venues that have a more particularized local interest in this case. (Dkt. No. 18 at 17.) However, LGL has not moved to dismiss this case for improper venue. LGL's Motion is limited to lack of personal jurisdiction. (*See generally id.*)

9

The Court finds that while LGL may be slightly burdened by defending in a foreign forum, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Synthes*, 563 F.3d at 1299 (citing *World-Wide Volkswagen*, 444 U.S. at 294). The second, third, and fourth factors further favor jurisdiction because both Texas and the United States have an interest in enforcing federal patent laws and providing UCT a forum to efficiently pursue its claims for patent infringement and for the parties to efficiently resolve their disputes. *See id.* ("The United States also has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement."). As to the fifth factor, the United States and Texas have an interest in furthering their social policies to discourage patent infringement.

Accordingly, the Court finds that the exercise of personal jurisdiction over LGL is both reasonable and fair.

### B.  Rule 4(k)(2)

Alternatively, the Court also has personal jurisdiction over LGL pursuant to Rule 4(k)(2). LGL argues that Rule 4(k)(2) does not provide an alternative basis for personal jurisdiction because LGL does not conduct business in the United States. (Dkt. No. 18 at 18.) In response, UCT argues that LGL delivers the allegedly infringing products into the stream of commerce with the expectation that they will be purchased in the United States. (Dkt. No. 23 at 17.)

#### 1.  UCT's Patent Infringement Claims Arise Under Federal Law

The first prong of Rule 4(k)(2) requires that the claim against the defendant arises under federal law. *Synthes*, 563 F.3d at 1290. It is undisputed that federal patent law governs UCT's patent infringement allegations. 28 U.S.C. § 1338; *Synthes*, 563 F.3d at 1296 ("The claim of patent infringement presents a federal question"). Therefore, the first prong of Rule 4(k)(2) is satisfied.

10

### 2. LGL Contends it is Not Subject to Personal Jurisdiction in any United States Forum

The second prong of Rule 4(k)(2) requires that the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction. *Synthes*, 563 F.3d at 1290. If the defendant "contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Merial, Ltd. v. Cipla, Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). Therefore, a defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. *Id.*

Here, LGL contends that it cannot be sued in Texas. (Dkt. No. 18 at 6-15.) However, LGL does not name any other state where the suit could proceed. (*See generally id.*) Therefore, the second prong of Rule 4(k)(2) is satisfied.

### 3. The Court's Exercise of Personal Jurisdiction Comports with Due Process

The third prong of Rule 4(k)(2) requires that the Court's exercise of personal jurisdiction comports with due process. *Synthes*, 563 F.3d at 1290. This analysis "contemplates a defendant's contacts with the **entire United States**, as opposed to the state in which the district court sits." *Id.* at 1295 (emphasis added). To determine whether a defendant has minimum contacts, the court considers whether "(1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *M-I Drilling*, 890 F.3d at 1000. Thus, Rule 4(k)(2) serves as a federal long-arm statute. *Id.* at 1296.

Here, given that the Court has already concluded that it has personal jurisdiction over LGL based on its contacts with Texas, the Court also finds that it has personal jurisdiction over LGL based on its contacts directed to the United States at large. LGL has sufficient minimum contacts with the United States under the stream of commerce theory. (*See supra* Section III.A.1.) UCT's

claims arise out of or related to LGL's activities in the United States. (*See supra* Section III.A.2.) Finally, the Court's assertion of personal jurisdiction over LGL is reasonable and fair. (*See supra* Section III.A.3.)

Accordingly, in the alternative, the Court finds that it has personal jurisdiction over LGL under Rule 4(k)(2).

## IV.   CONCLUSION

Having considered the Motion, the Court finds that it should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 16th day of October, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE