███████

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., <br><br>       Plaintiff, <br><br> v. <br><br> LENOVO GROUP LIMITED. <br><br>       Defendant. | Case No. 2:23-cv-00449-JRG |

**DEFENDANT LENOVO GROUP LIMITED'S OPPOSED**
**<u>MOTION TO STRIKE INFRINGEMENT CONTENTIONS</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     RELEVANT FACTUAL BACKGROUND....................................................................2

        A.      UCT's Complaint..................................................................................2

        B.      UCT's Infringement Contentions .........................................................3

        C.      LGL's Discovery Requests to UCT .......................................................4

        D.      The Intel License...................................................................................5

        E.      UCT's Discovery Requests to LGL .......................................................5

III.    LEGAL STANDARD............................................................................................7

IV.     ARGUMENT .....................................................................................................8

        A.      UCT's Infringement Contentions Should Be Stricken as a Whole.........................8

        B.      UCT's Infringement Contentions Should Be Stricken at a Minimum as to
                the Intel-Based Products ......................................................................11

V.      CONCLUSION.................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*,
    359 F. Supp. 2d 558 (E.D. Tex. 2005) ...................................................................7

*Connectel, LLC v. Cisco Sys., Inc.*,
    391 F. Supp. 2d 526 (E.D. Tex. 2005) ...................................................7, 8, 12, 15

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) ............................................................................10

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
    967 F.3d 1380 (Fed. Cir. 2020) ...............................................................8, 9, 10, 14

*Hybrid Audio, LLC v. High Tech Computer Corp.*,
    No. 6:11-CV-195 LED-JDL, 2012 WL 12502182 (E.D. Tex. Nov. 2, 2012 ......................8, 9

*INVT SPE LLC v. Int'l Trade Comm'n*,
    46 F.4th 1361 (Fed. Cir. 2022) .............................................................................10

*Linex Technologies, Inc. v. Belkin Int'l, Inc.*,
    628 F. Supp. 2d 703 (E.D. Tex. 2008) .........................................................9, 12, 14

*Optis Wireless Tech., LLC v. Huawei Techs. Co.*,
    No. 2:17-CV-00123-JRG-RSP, 2018 WL 3375192 (E.D. Tex. July 11, 2018) ......................11

**Rules & Regulations**

Patent Rule 3–1 ...................................................................................................7, 8

**TABLE OF EXHIBITS**

| Ex. No. | Description |
|---|---|
| 1 | Plaintiff's Disclosure of Asserted Claims and Infringement Contentions ("Plaintiff's Infringement Contentions") |
| 2 | Ex. A to Plaintiff's Infringement Contentions (Accused Products) |
| 3 | Ex. B to Plaintiff's Infringement Contentions (Asserted Claims) |
| 4 | Ex. C to Plaintiff's Infringement Contentions ('905 Patent Claim Chart) |
| 5 | Ex. D to Plaintiff's Infringement Contentions ('307 Patent Claim Chart) |
| 6 | Ex. E to Plaintiff's Infringement Contentions ('798 Patent Claim Chart - USB) |
| 7 | Ex. F to Plaintiff's Infringement Contentions ('798 Patent Claim Chart - PCIe) |
| 8 | Ex. G to Plaintiff's Infringement Contentions ('265 Patent Claim Chart) |
| 9 | Ex. H to Plaintiff's Infringement Contentions ('712 Patent Claim Chart) |
| 10 | Ex. I to Plaintiff's Infringement Contentions ('520 Patent Claim Chart) |
| 11 | Ex. J to Plaintiff's Infringement Contentions ('231 Patent Claim Chart) |
| 12 | Ex. K to Plaintiff's Infringement Contentions ('103 Patent Claim Chart) |
| 13 | Defendant's First Set of Interrogatories (Nos. 1–11) to Plaintiff (June 20, 2024) |
| 14 | Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1–11) to Plaintiff (July 29, 2024) |
| 15 | Video Electronics Standards Association (VESA) Intellectual Property Rights (IPR) Policy |
| 16 | Lattice Semiconductor Corporation USB 2.0 Contributors Agreement |
| 17 | |
| 18 | |
| 19 | Plaintiff's First Set of Interrogatories (Nos. 1–10) to Defendant (June 14, 2024) |
| 20 | Defendant's Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 1–10) to Defendant (October 11, 2024) |
| 21 | Second Supplemental Appendix to Defendant's Supplement Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 1–10) to Defendant (November 22, 2024) |
| 22 | November 15, 2024, Email from Ashley Ratycz to Defendant's Counsel |
| 23 | December 19, 2024, Letter from Joshua H. Lee to Ashley Ratycz |
| 24 | Product Specification Reference, ThinkPad T14s Gen 4 (Intel) |
| 25 | Product Specification Reference, ThinkPad X13 Yoga Gen 4 |
| 26 | Product Specification Reference, ThinkPad P16s Gen 1 (Intel) |
| 27 | December 2, 2024, Email from Ashley Ratycz to Defendant's Counsel |
| 28 | December 6, 2024, Email from Joshua H. Lee to Ashley Ratycz |
| 29 | December 10, 2024, Email from Ashley Ratycz to Joshua H. Lee |
| 30 | December 13, 2024, Email from Joshua H. Lee to Ashley Ratycz |
| 31 | Plaintiff's Supplemental Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1–11) to Plaintiff (December 20, 2024) |
| 32 | Plaintiff's Supplemental Objections and Responses to Defendant's Second Set of Interrogatories (Nos. 12–15) to Plaintiff (January 6, 2025) |

Defendant Lenovo Group Limited ("LGL") respectfully moves the Court for an Order striking Plaintiff Universal Connectivity Technologies Inc.'s ("UCT" or "Plaintiff") Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") for failure to comply with Local Patent Rule ("P.R.") 3–1.

## I.     INTRODUCTION

UCT contends hundreds of products, collectively, infringe the eight patents asserted in this action. UCT's Infringement Contentions, however, do not even attempt to identify specifically where each element of each asserted claim is found within each of those accused products, as required by P.R. 3–1. Rather, UCT's Infringement Contentions chart only various industry standards (*e.g.*, DisplayPort™; USB) without reference to the number and different types of products that UCT contends infringe, nor any indication of which components within each product allegedly perform each claim limitation. Critically, however, UCT's Infringement Contentions do not contend that any of the asserted patents is essential or necessary to any of the charted standards. And in recent discovery, UCT has specifically rebuffed any suggestion that the asserted patents are "essential" or "necessary" to the charted standards. UCT's infringement theories based solely on those standards are thus necessarily deficient under controlling precedents.

Additionally, UCT's Infringement Contentions are further deficient in view of UCT's own statements in its pleadings. In its Complaint, UCT affirmatively represented that—for each asserted patent—its "identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and Wi-LAN," the parent to UCT. Yet, UCT's threadbare identification of Accused Products in its Infringement Contentions includes 924 products that UCT concedes include at least an Intel processor (the "Intel-Based Products"), thereby implicating the Intel License on its face. UCT fails to provide any specific contentions as to why each of the 924 Intel-

1

Based Products could infringe the asserted patents in light of the Intel License (for instance by providing a claim chart for an Intel-Based Product that maps each claim limitation to a non-Intel component). Rather, UCT inappropriately lumps the 924 Intel-Based Products together with the hundreds of other Accused Products in UCT's (deficient) standards-based infringement theories— with no attempt to connect any claim element to any component of any Accused Product, much less any non-Intel component. UCT's Infringement Contentions as to these 924 Intel-Based Products should be stricken for this additional reason.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    UCT's Complaint

UCT alleges infringement of U.S. Patent Nos. 7,154,905 ("the '905 Patent"), 7,187,307 ("the '307 Patent"), 7,746,798 ("the '798 Patent"), 9,232,265 ("the '265 Patent"), 8,680,712 ("the '712 Patent"), 7,856,520 ("the '520 Patent"), 7,921,231 ("the '231 Patent"), and 9,852,103 ("the '103 Patent") (collectively, the "Asserted Patents"). Dkt. 1, ¶1. The accused products identified in the Complaint include any and all Lenovo laptops, desktops, monitors, and docking stations that "***support***" certain DisplayPort™ and USB standards. *See* Dkt. 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90 (emphasis added). In particular, UCT's infringement allegations are based on each product's alleged "support" of (i) DisplayPort 1.0 or later, (ii) DisplayPort Alt Mode 1.0 or later USB 3.0 or later, (iii) USB-C 1.0 or later, (iv) USB4 1.0 or later, and/or (v) USB Power Delivery 2.0 or later. *See* Dkt. 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90.

UCT's Complaint, however, is devoid of any allegation that any Lenovo product, in fact, ***practices*** any accused standard. *See generally* Dkt. 1. Additionally, UCT's Complaint is devoid of any allegation that any claim of any Asserted Patent is necessary or essential to any accused standard—such that practice, let alone "support," of the standard necessarily infringes. *See id.*

Further, UCT's Complaint affirmatively recognizes that a number of Lenovo products are licensed under the Asserted Patents in view of a pre-existing license granted by UCT's parent company, Wi-Lan Inc. In particular, and for each Asserted Patent, UCT affirmatively represents that its "identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and Wi-LAN." Dkt 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90; *see* Dkt. 1, ¶2 ("UCT is a wholly-owned subsidiary … of Wi-Lan Inc. ('Wi-LAN')").

### B.     UCT's Infringement Contentions

UCT's Infringement Contentions (**Exs. 1–12**) define "Accused Products" as any and all Lenovo (i) laptops, (ii) desktops, (iii) monitors, (iv) docking stations, and (v) solid-state drives (SSDs) that "***support*** any of the following USB Implementers Forum and/or VESA standards: USB 3.0 or later, USB-C 1.0 or later, USB4 1.0 or later, USB Power Delivery 2.0 or later, DisplayPort 1.0 or later, DisplayPort Alt Mode 1.0 or later, HDMI Alt Mode for USB-C, and/or PCIe 3.0 or later." **Ex. 1** at 2–3 (emphasis added). UCT named more than 1,500 of these Accused Products in its Infringement Contentions, without any product-by-product analysis. **Ex. 2**.

UCT's Infringement Contentions included "[c]laim charts," which, according to UCT, identify the location of "every element of every asserted claim" of the Asserted Patents within each of the hundreds of Accused Products. **Ex. 1** at 3; *see* **Exs. 4–12**. The claims charts do no such thing. To the contrary, each chart, at most, purports to link disparate portions of a version of an accused standard to the asserted claims of an Asserted Patent. *See* **Exs. 4–12**.

For example, UCT's claim chart for the '905 Patent contends that any Lenovo product that "support[s] DisplayPort 1.2 and later" infringes various claims of the '905 Patent, and thereafter merely purports to link disparate portions of the "DisplayPort 1.4 Specification"—but no earlier version—to the elements of certain claims of the '905 Patent. **Ex. 4**. The chart, however, fails to

identify the location of every element of every asserted claim within each Accused Product. Rather, the chart includes only a ***single reference*** to a single Accused Product—contending only that "Lenovo Legion 7 Gen 7" comprises a "communications device" and thereby satisfies certain claim preambles, which UCT contends are non-limiting. **Ex. 4** at [8pre], [21pre].

As another example, UCT's claim chart for the '798 Patent contends that any Lenovo product that "support[s] USB 3.0 and later" infringes various claims of the '798 Patent, and thereafter merely purports to link disparate portions of the "USB 3.2 Specification"—but no earlier version—to the elements of certain claims of the '798 Patent. **Ex. 6**. This chart similarly fails to identify the location of the asserted claim elements within ***any*** Accused Product. The sole reference to any Accused Product is an assertion that "the Lenovo ThinkPad T14 Gen 3 Laptop" satisfies certain claim preambles, which UCT again contends are non-limiting. **Ex. 6** at [11pre], [19pre].

### C.    LGL's Discovery Requests to UCT

Since UCT's infringement theories are based exclusively on the accused standards as opposed to the Accused Products, LGL requested clarity from UCT as to whether each Asserted Patent is "necessary" or "essential" to each accused standard. UCT has failed to answer, however, and, in fact, affirmatively rebuffed any suggestion that the Asserted Patents are standard-essential. In particular, LGL requested that UCT "[s]tate whether UCT contends that the Patents-in-Suit are necessary or essential to the practice of any portion of any Standard." **Ex. 13** at 6. UCT initially failed to provide any such contention in response. **Ex. 14** at 16–18. Rather, UCT affirmatively questioned whether any of the Asserted Patents contains "Necessary Claims as defined in the VESA and USB-IF IPR policies."[1] **Ex. 14** at 17. Further, UCT has suggested that LGL—not

---

[1] The VESA Intellectual Property Rights Policy defines "Necessary Claims" as "[t]hose claims under Patents anywhere in the world that would be Necessarily Infringed by the implementation of the Required Elements of a Specification/Standard." **Ex. 15** at 3. The "USB 2.0 Contributors Agreement" by Lattice Semiconductor Corporation (the predecessor-in-interest to the Asserted

UCT—has the burden of demonstrating that the Asserted Patents contain "Necessary Claims" as defined in those policies (and that LGL has not yet made any such allegation). **Ex. 14** at 18. In a recent supplement, UCT has further stated: "UCT does not have a contention one way or another whether the Patents-in-Suit are necessary or essential for purposes of this case." **Ex. 31** at 18.

### D.    The Intel License

UCT's Infringement Contentions also are devoid of any reference to the Intel License—despite UCT's affirmative disclaimer in the Complaint. Dkt. 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90.



The Intel License ████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ **Ex. 17**, §§ 3.2, 1.6; **Ex. 18**, § 5. ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ **Ex. 17**, § 1.7(i),(iii). And the Intel License makes clear that ██████████ ████████████████████████████████████████████████ ██████████████████████ **Ex. 17**, § 3.2.

### E.    UCT's Discovery Requests to LGL

Based on its standards-based infringement theories, UCT served numerous discovery requests seeking the identification of all Lenovo products that support any one of the industry standards accused of infringement by UCT, including identification of which standard(s) each

---

Patents), for example, similarly defines "Necessary Claims" as, *inter alia*, "claims of a patent or patent application that …are necessarily infringed by implementing those portions of the Final Specification." **Ex. 16** at 2.

product supports. **Ex. 19** at 9–10. UCT also served requests seeking the identification of the "supplier, model name and number" for the "chipset," "power delivery controller," "embedded controller," and "graphics cards and drivers" used in each such Lenovo product "that is responsible for the DisplayPort, PCIe, and/or USB functionality." **Ex. 19** at 10–11.

In accordance with the Court's Order (Dkt. 44), LGL (including via subpoena to its subsidiary, Lenovo (United States) Inc.) provided responsive information—including identification of supported standards and supplier information for numerous components in each product—for nearly 700 Lenovo products. *See* **Ex. 20** at 10–20; **Ex. 21**. Given the numerous standards, products, and components implicated in UCT's discovery requests, this has resulted in LGL providing more than 11,000 distinct pieces (*i.e.*, cells) of information with respect to those products in a manually created Microsoft Excel file included as an Appendix to LGL's discovery responses. *See* **Ex. 21**. LGL's responses, moreover, account for UCT's affirmative representation in UCT's Complaint that UCT does not "intend[] to accuse products where the infringement accusations are directed at products that are licensed by the [Intel] [L]icense." **Ex. 20** at 12, 14, 16, 18, 20. Thus, LGL has not provided information for products that utilize an Intel processor—an "Intel Product" under the Intel License—in light of both UCT's affirmative representation in UCT's Complaint as well as UCT's failure to articulate any specific infringement theory with respect to such Intel-Based Products in its Infringement Contentions.

UCT has recently alleged LGL's discovery responses are deficient with respect to these Intel-Based Products because, according to UCT's newly minted position, ███████████████ ████████████████████████████████████████████████████ **Ex. 22**. UCT contends that ██ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* (emphasis added). But this is not what the

6

Intel License actually says. The scope of the Intel License is ████████████

████████████████████████████████

████████████ *See* **Ex. 17**, § 1.7(iii) ████████████

████████████████████████████████

████████████████████████████████

UCT recently suggested in an email—with information found nowhere in its Infringement Contentions—that "[s]everal of UCT's asserted patents are directed to functionality that is provided by components in LGL's products other than the processor," and "for those patents, it does not matter whether LGL's products include an Intel processor" because the "relevant functionality" comes from "the power delivery controller" or "graphics card," not the processor." **Ex. 22**. Proceeding from that premise, and without providing any further information regarding this new theory, UCT has demanded LGL provide extensive information on 924 "Lenovo Products with Intel Processors." *Id.* In response, LGL advised UCT that its demand for such discovery on those 924 Intel-Based Products is meritless in view of the UCT's affirmative representations in the Complaint, the Intel License, and UCT's failure to specifically chart any Intel-Based Products (or any product for that matter) in its Infringement Contentions. *See* **Ex. 23**.

## III.    LEGAL STANDARD

The Local Patent Rules set a high standard and require plaintiffs to disclose their infringement contentions before discovery has begun. *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). Plaintiffs are required to "formulate, test, and crystallize their infringement theories" before providing their infringement contentions. *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005).

Patent Rule 3–1 requires that a party claiming patent infringement must serve on all parties infringement contentions that, *inter alia*, include "[a] chart identifying specifically where each

element of each asserted claim is found within each Accused Instrumentality." Plaintiffs must "rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *Connectel*, 391 F. Supp. 2d at 528. And to comply with Patent Rule 3–1, infringement contentions must set forth "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves." *Id.* at 527–28 (citation omitted).

Notably, "simply charting [a] patent's claims to an industry standard" may be "insufficient to give defendants notice of a plaintiff's infringement theories." *Hybrid Audio, LLC v. High Tech Computer Corp.*, No. 6:11-CV-195 LED-JDL, 2012 WL 12502182, at *2 (E.D. Tex. Nov. 2, 2012) (citing *Linex Technologies, Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 708 (E.D. Tex. 2008)). "[I]n order to comply with P.R. 3–1," a plaintiff's contentions with respect to an industry standard must demonstrate (i) "how each asserted claim is linked to the industry standard" and (ii) "***how each accused product conforms to the standard***." *Id.* (emphasis added). "[M]erely linking the asserted claims to the industry standard, without more, does not give sufficient notice as to 'how each particular Accused Device is alleged to infringe the asserted claims.'" *Id.*; *see Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1384 (Fed. Cir. 2020) ("[T]he fact that a patent's claims cover an industry standard does not necessarily establish that all standard-compliant devices implement the standard in the same way.").

## IV.    ARGUMENT

### A.    UCT's Infringement Contentions Should Be Stricken as a Whole

UCT's Infringement Contentions fail to specifically identify where each element of each asserted claim is found within each Accused Product and thus are deficient under P.R. 3–1. Indeed, a plaintiff's infringement contentions must, ordinarily, demonstrate where each element of each asserted claim is found within each accused product based on the functionality of the ***product***

*itself*. P.R. 3–1; *see Linex*, 628 F. Supp. 2d at 707–09; *see also Hybrid Audio*, 2012 WL 12502182, at *2. Here, UCT's Infringement Contentions undisputedly fail to make this showing for each of the hundreds of Accused Products. *See* **Exs. 4–12**.

The only exception to P.R. 3–1's strict requirement is where a plaintiff contends that an asserted claim is necessary to an industry standard and demonstrates that mandatory requirements of that standard meet each element of the claim. *See Linex*, 628 F. Supp. 2d at 707–09; *Hybrid Audio*, 2012 WL 12502182, at *2; *see also Godo Kaisha*, 967 F.3d at 1384 ("[T]he fact that a patent's claims cover an industry standard does not necessarily establish that all standard-compliant devices implement the standard in the same way."). UCT has failed to make any such contention, however, and, in fact, has disclaimed any position on whether the Asserted Patents are "necessary or essential" to the practice of any standard. *See* **Ex. 14** at 16–18; **Ex. 31** at 18–20.

At most, UCT's Infringement Contentions merely purport to link the elements of the asserted claims to certain, limited versions of industry standards, respectively—with no references to any specific components or features of any Accused Products. *See* **Exs. 4–12**. This is insufficient under P.R. 3–1. *Hybrid Audio*, 2012 WL 12502182, at *2 ("In sum, merely linking the asserted claims to the industry standard, without more, does not give sufficient notice as to 'how each particular Accused Device is alleged to infringe the asserted claims.'"). Indeed, "[w]hile … there may be certain instances where an industry standard alone may be sufficient to show infringement, this does not compel the conclusion that a plaintiff satisfies P.R. 3–1 in all circumstances by charting an industry standard." *Hybrid Audio*, 2012 WL 12502182, at *2. The circumstances here demonstrate that UCT has not satisfied P.R. 3–1 by merely charting recent versions of the accused industry standards in its Infringement Contentions.

As the Federal Circuit has made clear, "the fact that a patent's claims cover an industry standard does not necessarily establish that all standard-compliant devices implement the standard in the same way." *Godo Kaisha*, 967 F.3d at 1384. For example, "an asserted patent claim might not cover all implementations of an industry standard." *Id.* As such, the plaintiff must show that the claims "cover[] mandatory aspects of [the] standard." *Id.*; *see Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) (holding a plaintiff can demonstrate infringement under a standard-based theory only if "all implementations of a standard infringe the claims of a patent"); *see also INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377, 1380 (Fed. Cir. 2022) (noting claim must be "standard essential" to support a standard-based infringement theory).

UCT's Infringement Contentions fail to show that the asserted claims cover any "mandatory" aspects of the accused standards. *See* **Exs. 4–12**. Indeed, UCT has failed to contend that any of the asserted claims are "necessary" or "essential" to any of the charted standards—and, in fact, UCT disputes this issue. *See* **Ex. 14** at 16–18; **Ex. 31** at 18–20. This failure is fatal to UCT's infringement theory. *See INVT*, 46 F.4th at 1377, 1380 (noting claim must be "standard essential" to support a standard-based infringement theory); *see also Godo Kaisha*, 967 F.3d at 1384 ("[T]he fact that a patent's claims cover an industry standard does not necessarily establish that all standard-compliant devices implement the standard in the same way."); *Fujitsu*, 620 F.3d at 1328 ("Only in the situation where a patent covers every possible implementation of a standard will it be enough to prove infringement by showing standard compliance.").

Further, UCT's Infringement Contentions fail to show that the asserted claims cover "mandatory" aspects of each ***version*** of the standards that UCT purports to accuse of infringement. For example, UCT's claim chart for the '905 Patent contends that any Lenovo product that "support[s] DisplayPort 1.2 and later" infringes, but UCT, at most, charts only portions of the

"DisplayPort 1.4 Specification" in support of those contentions. **Ex. 4**. As discussed, UCT has failed to show those portions of the DisplayPort 1.4 Specification are "mandatory"—let alone that those same portions exist in earlier versions of the standard (*e.g.*, DisplayPort 1.2) and are "mandatory" aspects of those earlier versions. Likewise, UCT's claim chart for the '798 Patent contends that any Lenovo product that "support[s] USB 3.0 and later" infringes, but UCT, at most, charts only portions of the "USB 3.2 Specification" in support of those contentions. **Ex. 6**. UCT has failed to show those portions of the USB 3.2 Specification are "mandatory"—let alone that those same portions exist in earlier versions of the standard (*e.g.*, USB 3.0) and are "mandatory" aspects of those earlier versions.

In sum, UCT's Infringement Contentions rely "upon a necessary inference tying the [Accused Products] to the [accused] standard[s] and the standard[s] to the claim[s]." *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-CV-00123-JRG-RSP, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018). The "downside" to such an infringement theory is that, if the patent is not "essential to the standard, the link between the product and the patent breaks." *Id.* Such is the case here, according to UCT's discovery responses. *See* **Ex. 14** at 16–18; **Ex. 31** at 18–20. UCT has failed to contend—and, in fact, disputes whether—the asserted claims are "necessary" or "essential" to the accused standards, respectively—let alone each and every version of those standards UCT purports to accused of infringement. As such, UCT's Infringement Contentions fail to set forth theories of infringement with sufficient specificity to provide LGL with notice of infringement, as required by P.R. 3–1, and should therefore be stricken in their entirety.

### B.    UCT's Infringement Contentions Should Be Stricken at a Minimum as to the Intel-Based Products

UCT's Infringement Contentions are further insufficient with respect to the Intel-Based Products, which undisputedly incorporate Intel processors and other Intel-supplied components.

As an initial matter, UCT's identification of these Intel-Based Products in UCT's Infringement Contentions cannot be reconciled with UCT's affirmative and repeated representation in the Complaint that its "identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and Wi-LAN [the parent company of UCT]." Dkt 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90.

Put simply, UCT has expressly acknowledged that the Intel License prohibits UCT from identifying certain products as Accused Products. But UCT has nonetheless identified 924 Intel-Based Products in its Infringement Contentions without articulating any basis for how and why those products are not licensed under the Intel License. UCT's Infringement Contentions as to these Intel-Based Products are thus *per se* deficient. UCT clearly has not "crystallize[d]" its purported infringement theory as to these Intel-Based Products in view of the Intel License, let alone explained such theory "with great detail" and "sufficient specificity" in its Infringement Contentions, as required by P.R. 3–1. *See Connectel*, 391 F. Supp. 2d at 527–28.

Specifically, LGL has no notice of UCT's infringement theories insofar as how each of the Intel-Based Products purportedly operates in accordance with each charted standard, respectively, and does so outside the scope of the Intel License. Rather, UCT's infringement theories as to the Intel-Based Products are based on UCT's general contentions merely linking the accused standards to the asserted claims. Those contentions are fundamentally deficient, as discussed above. But even if allowed, those contentions are still deficient as to the Intel-Based Products because they fail to account for the Intel License. Dkt 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90. "Where—as here—an industry standard fails to delineate details which are critical to an assertion or determination of infringement, such a standard will not, alone, suffice as the basis for Infringement Contentions required by this Court's Patent Rules." *Linex*, 628 F. Supp. 2d at 709.

UCT has only recently suggested—in correspondence and outside the scope of its Infringement Contentions—that ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ **Ex. 22**. UCT's suggestion is directly contrary to the Intel License. As discussed above, ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ **Ex. 17**, § 1.7(iii) (emphasis added). ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ **Ex. 22** (emphasis added). ████████████

████████████████████████████████████████████████████

In any event, UCT's Infringement Contentions are devoid of any infringement theory even based on UCT's (incorrect) interpretation of the Intel License and evidence-free speculation about the operation of individual components in each of the Intel-Based Products. *See* **Exs. 4–12**. Indeed, there is no discussion of any Intel-Based Product in UCT's claim charts, let alone any discussion as to which component(s) in each of those Intel-Based Products is providing the accused functionality for each asserted claim of each Asserted Patent. *See* **Exs. 4–12**.

This lack of specificity as to each of the Intel-Based Products in UCT's claim charts is fatal to UCT's Infringement Contentions under P.R. 3–1. UCT's generic, standards-based claim charts "fail[] to take into account that the way in which each Accused Product is alleged to infringe … will not necessarily be the same," even if all Accused Products support the accused standards,

respectively. *Linex*, 628 F. Supp. 2d at 708; *see Godo Kaisha*, 967 F.3d at 1384 ("[T]he fact that a patent's claims cover an industry standard does not necessarily establish that all standard-compliant devices implement the standard in the same way."). To avoid the Intel License, UCT must articulate a theory as to why, for each of the 924 Intel-Based Products, ██████████████

████████████████████████████████████████████████████████████. *See* **Ex. 17**, §

1.7(iii). UCT's Infringement Contentions utterly fail to do so. And UCT's failure to include any such information as to any of the 924 Intel-Based Products in its Infringement Contentions renders UCT's contentions deficient. *See* P.R. 3–1.

This is especially true in light of UCT's newfound, but unsubstantiated, suggestion that "[s]everal of UCT's asserted patents are directed to functionality that is provided by components in LGL's products" other than "Intel Products" (*e.g.*, an Intel processor), such as the "power delivery controllers and graphics cards." **Ex. 22**. Notwithstanding the fact that the Intel processors provide the majority of the functionality in each Intel-Based Product, public information shows that Intel provides other components for the Intel-Based Products, such as graphics cards—███████

████████████████████████████████████████████ **Ex. 17**, § 1.7(i). For example, the graphics functionality in the ThinkPad T14s Gen 4 (Intel) is supplied by "Intel® Iris® Xe Graphics" integrated in the Intel processor. **Ex. 24**. Likewise, the graphics functionality in the ThinkPad X13 Yoga Gen 4 is supplied by "Intel® Iris® Xe Graphics" integrated in the Intel processor. **Ex. 25**. The ThinkPad P16s Gen 1 (Intel) includes both an "Intel® Iris® Xe Graphics" card as well as a "NVIDIA® T550 Laptop GPU" graphics card. **Ex. 26**. But, as discussed, UCT's Infringement Contentions are devoid of any specific theory as to how and why the NVIDIA graphics card in this Intel-Based Product, as opposed to the Intel processor and graphics card, purportedly provides the majority of the functionality of the product. *See* **Exs. 4–12**.

Given these and other flaws in UCT's position, UCT recently pivoted to demanding discovery on only the power delivery controller with respect to a smaller subset of 763 Intel-Based Products that "support USB PD 2.0 or later." **Ex. 27**. LGL advised UCT that its revised demand was still meritless because UCT has failed to identify any Asserted Patent infringed by any of these 763 Intel-Based Products, much less provided any justification for why the Intel License does not cover these products. **Ex. 28**. Further, none of the claim charts included in UCT's Infringement Contentions accuses of infringement products that support "USB PD 2.0 or later." *Id.* In response, UCT pivoted, again, to demanding discovery on only 487 Intel-Based Products that support a ***different*** standard, "USB-C 1.0 (or later)"—newly claiming such products infringe claims of the '265 Patent and '712 Patent. **Ex. 29**. LGL advised UCT that this further revised demand was still meritless because, *inter alia*, UCT has failed to provide any justification for why the Intel License does not cover those products. **Ex. 30**. And, as discussed, UCT's Infringement Contentions for these two patents fail to articulate a theory as to why, for each of these 487 Intel-Based Products, the power delivery controller is (i) not supplied by Intel and (ii) provides the majority of the functionality of each Intel-Based Product, respectively. *See* **Exs. 8–9**.

For all these reasons, UCT's Infringement Contentions as to the Intel-Based Products fail to comply with P.R. 3–1 and should be stricken. Indeed, UCT's recent, multiple pivots make clear that UCT has not "crystallize[d]" any purported infringement theory as to any Intel-Based Product in view of the Intel License—let alone explained such theory "with great detail" and "sufficient specificity" in its Infringement Contentions, as required by P.R. 3–1. *See Connectel*, 391 F. Supp. 2d at 527–28.

## V.    CONCLUSION

For all these reasons, UCT's Infringement Contentions fail to comply with P.R. 3–1 and should be stricken, both generally and as to the Intel-Based Products.

Dated: January 21, 2025

Respectfully Submitted,

*/s/ Steven D. Moore*
Steven D. Moore
**KILPATRICK TOWNSEND & STOCKTON LLP**
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone: (415) 576-0200
Facsimile:  (415) 576-0300
Email:  smoore@ktslaw.com

Russell A. Korn
Joshua H. Lee
Christopher S. Leah
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: rkorn@ktslaw.com
Email: jlee@ktslaw.com
Email: cleah@ktslaw.com

Kasey E. Koballa
**KILPATRICK TOWNSEND & STOCKTON LLP**
4208 Six Forks Road
Raleigh, NC  27609
Telephone: (919) 420-1700
Facsimile:  (919) 420-1800
Email:  kkoballa@ktslaw.com

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendant Lenovo Group Limited*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2025, all counsel of record who have consented to electronic service are being served with a copy of this filing via email, as well as a copy of the NEF filing via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Steven D. Moore*
Steven D. Moore

**CERTIFICATE OF CONFERENCE**

Counsel for both parties have complied with the meet and confer requirements of Local Rule CV-7(h). In particular, counsel for Defendant, including lead counsel Steve Moore, local counsel Travis Underwood, Joshua Lee, and Kasey Koballa, met and conferred with counsel for Plaintiff, including lead counsel Brett Cooper, local counsel Andrea Fair, Seth Hasenour, and Ashley Ratycz, Jonathan Yim, regarding the issues raised herein on January 21, 2025. The parties were unable to reach agreement during the meet and confer the issues raised herein, including because Plaintiff maintains its Infringement Contentions are sufficient to comply with P.R. 3–1. Therefore, at the conclusion of the meet and confer, the parties reached an impasse leaving open one or more issues for this Court to resolve. And Plaintiff opposes this Motion to Strike.

*/s/ Steven D. Moore*
Steven D. Moore

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that this Motion/Brief and Exhibits 4-5, 10-11, 17-18, and 21-23 attached to the Declaration of Joshua H. Lee, are authorized to be filed under seal pursuant to the June 24, 2024, Protective Order (Dkt. 32).

*/s/ Steven D. Moore*
Steven D. Moore

17