**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> LENOVO GROUP LIMITED. <br><br> Defendant. | Case No. 2:23-cv-00449-JRG |

**DEFENDANT LENOVO GROUP LIMITED'S REPLY IN SUPPORT OF**
**MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS**

For the reasons discussed in LGL's Motion (Dkt. 78, "Motion") as well as below, UCT's Infringement Contentions fail to comply with P.R. 3–1 and should be stricken, both generally and as to the Intel-Based Products. UCT's Response (Dkt. 87, "Response") is unavailing.

## I.   UCT'S INFRINGEMENT CONTENTIONS SHOULD BE STRICKEN

UCT failed to provide "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality" for the 1,500+ Accused Products identified in UCT's Infringement Contentions. P.R. 3–1. Rather, UCT's charts merely purport to link the elements of the asserted claims to certain, limited versions of select industry standards, which UCT argues provide sufficient "notice" of its infringement theories. Resp. at 7.

UCT is mistaken. "[M]erely linking the asserted claims to the industry standard, without more, does not give sufficient notice as to 'how each particular Accused Device is alleged to infringe the asserted claims.'" *Hybrid Audio, LLC v. High Tech Computer Corp.*, No. 6:11-CV-195 LED-JDL, 2012 WL 12502182, at *2 (E.D. Tex. Nov. 2, 2012). Rather, "in order to comply with P.R. 3–1," contentions with respect to an industry standard—like UCT's—must demonstrate "how each asserted claim is linked to the industry standard" and "how each accused product conforms to the standard." *Id.* UCT's contentions fail to do so, as discussed in LGL's Motion at 8–11. And tellingly, UCT fails to distinguish *Hybrid Audio* in its Response.[1]

Instead, UCT merely suggests the Patent Rules generally allow a "patentee [to] rely on an industry standard to provide notice of its infringement theories," citing *ICOMM Technologies, Inc. v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 2:05-CV-535, 2009 WL 10708009, at *1 (E.D. Tex. Dec. 3, 2009). Resp. at 7. But in *ICOMM*, the accused products were "cell phones that use

---

[1] The only reference to *Hybrid Audio* in UCT's Response is buried in a footnote, wherein UCT suggests only that requiring supplementation of its Infringement Contentions is a more appropriate remedy than striking them. Resp. at 11 n.5.

wireless communication technologies that operate in compliance with the 3G[] standard." *Id.* And the contentions were based on the fact that the accused products necessarily operate as "specified in the 3G standard," as required for wireless communication between cell phones. *Id.* at *3.

Here, in contrast, UCT has notably failed to contend that the asserted claims are mandatory, necessary, or essential to the practice of any industry standard—and, in fact, UCT has affirmatively disclaimed any such position. *See* Dkt. 78-14 at 16–18; Dkt. 78-31 at 18–20 ("UCT does not have a contention one way or another whether the Patents-in-Suit are necessary or essential for purposes of this case."). This failure (and related disclaimer) is fatal to UCT's industry-standard infringement theories, because a claim must be "standard essential" to support such a theory. *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377, 1380 (Fed. Cir. 2022); *see Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) (holding that a plaintiff may demonstrate infringement under a standard-based theory only if "all implementations of a standard infringe the claims of a patent"); *see also Hybrid Audio*, 2012 WL 12502182, at *2.

The insufficiency of UCT's industry-standard approach is further highlighted by the fact that UCT's charts merely purport to link only a single version of an industry standard to the claims, while more broadly contending that numerous other, uncharted—and sometimes earlier—versions of the standard infringe the claims. *See* Motion at 10–11. In fact, UCT has recently conceded that it does not even have—and thus has never reviewed nor analyzed—39 of the 55 standard versions UCT implicates in its Infringement Contentions. Dkt. 88; *see* Dkt. 84. For example, UCT's claim charts contend that Lenovo-branded products that support "DisplayPort Alt Mode on USB Type-C Version 1.0 and later" infringe claims of both the '520 Patent and the '231 Patent (Dkt. 78-10, 78-11), but UCT does not have, has never reviewed nor analyzed, and does not chart ***any*** version of the DisplayPort Alt Mode on USB Type-C standard. Dkt. 88; *see* Dkt. 84 at 4.

Thus, UCT's suggestion that it need only "provide representative examples" of alleged infringement from a single version of each standard as to a single "exemplary" product in order to satisfy P.R. 3–1 (Resp. at 9) falls flat—especially where UCT is attempting to leverage its deficient contentions to demand discovery on more than 1,500 different Accused Products (two-thirds of which UCT acknowledges implicate a third-party license, *see infra* Section II). Overall, UCT's Infringement Contentions fail to demonstrate that the asserted claims cover mandatory aspects of each of the numerous versions of the charted standards—including versions UCT has never seen nor analyzed—and thus fail to meet P.R. 3–1's requirements. *See Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-CV-00123-JRG-RSP, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018) (noting contentions that rely "upon a necessary inference tying" the accused products to an accused standard and the standard to the claims fail if the patent is not "essential" to the standard).

In an effort to deflect from these failures, UCT raises irrelevant points, such as by pointing to LGL's Invalidity Contentions and the parties' pre-suit discussions. But the fact that LGL served Invalidity Contentions under P.R. 3–3 based on the disclosures of prior art references relative to the asserted claims (the sufficiency of which UCT does not challenge) in no way demonstrates any sufficiency of UCT's infringement contentions. Resp. at 11. Similarly, the fact that LGL demonstrated the impropriety of threadbare infringement theories advanced by UCT's parent, WiLAN, years before this suit was filed does nothing to demonstrate any sufficiency of UCT's contentions in this litigation. Resp. at 11.[2]

---

[2] UCT's reliance on *Orion IP LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006), to suggest that LGL's Motion to Strike is somehow untimely (Resp. at 5) is also misplaced. In *Orion*, the defendant sought to strike the plaintiff's infringement contentions only after service of the plaintiff's opening expert report on infringement. *Id.* at 816. LGL, in contrast, filed its Motion to Strike with months remaining in the fact discovery period. *See generally* Dkt. 27.

## II. UCT'S INFRINGEMENT CONTENTIONS SHOULD BE STRICKEN AS TO THE INTEL-BASED PRODUCTS

UCT's argument that "LGL's potential license defense based on the Intel Agreement does not have any bearing on the notice provided by UCT's infringement contentions" (Resp. at 12) is incorrect. UCT—not LGL—affirmatively implicated the Intel license by expressly stating, in its Complaint, that UCT's "identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and Wi-LAN." Dkt 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90. Thus, at the outset of the case, UCT itself recognized that the scope of its infringement theories as to each Asserted Patent was limited by—and must account for—the Intel license.

UCT's Infringement Contentions, however, fail to acknowledge the Intel license—let alone account for the license. Rather, as discussed, UCT's infringement theories as to the 924 Intel-Based Products are based on charts that merely link industry standards to the asserted claims. Such generalized theories—which fail to account for the Intel license that UCT concedes restricts its infringement allegations—are insufficient. *See Linex Technologies, Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 709 (E.D. Tex. 2008) ("Where—as here—an industry standard fails to delineate details which are critical to an assertion or determination of infringement, such a standard will not, alone, suffice as the basis for Infringement Contentions required by this Court's Patent Rules.").

The insufficiency of UCT's Infringement Contentions as to these 924 Intel-Based Products is further demonstrated by the fact that UCT has now reduced its accusations and contentions to "only" 487 Intel-Based Products (which allegedly infringe only the '265 Patent and '712 Patent). *See* Resp. at 12, 14.[3] UCT states these are "the exact accused products that UCT contends are not

---

[3] At a minimum, this narrowing by UCT compels striking of UCT's Infringement Contentions as to the other 437 Intel-Based Products identified by UCT as "Accused Products." *See* Dkt. 78-2.

4

covered by the Intel Agreement." Resp. at 14. Neither this identification of these specific 487 products nor any infringement theory in which UCT explains or offers any evidence why this allegedly is the case is found anywhere in UCT's Infringement Contentions, however. *See, e.g.*, Dkt. 78-2 (UCT generally listing "Accused Products").

UCT's suggestion that its contentions as to these 487 Intel-Based Products are nonetheless sufficient because its counsel provided information in correspondence between the parties regarding this dispute (Resp. at 13–14) necessarily fails. Indeed, UCT's attorney argument that these products are not covered by the Intel license with respect to the '265 Patent and '712 Patent is entirely conclusory and evidence-free. Moreover, counsel's theory expressed in correspondence is based on a plain misreading of the Intel license—contending a non-Intel component in these products removes them from the scope of the license because "the Intel Agreement only applies if the Intel processor is providing substantially all, or a majority of, the functionality ***recited in the asserted patent claim***." Dkt. 84 at 7 (emphasis added). But in its Response, UCT concedes—as it must—that the Intel license covers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Resp. at 13 (emphasis added). UCT's attempt to cure the deficiencies its Infringement Contentions by having its counsel retroactively ***rewrite*** the Intel license—which is not addressed anywhere in UCT's Infringement Contentions—should be rejected.

LGL is not seeking to prematurely adjudicate the merits of any license defense, contrary to UCT's suggestion. Resp. at 14. Rather, LGL merely seeks to hold UCT to this Court's requirement of a crystallized, specific, and detailed infringement theory as to the Intel-Based Products, which is wholly absent from UCT's Infringement Contentions—despite UCT's repeated acknowledgments in its Complaint regarding the material relevance of the Intel license.

5

Dated: February 11, 2025

Respectfully Submitted,

*/s/ Steven D. Moore*
 Steven D. Moore
 **KILPATRICK TOWNSEND & STOCKTON LLP**
 Two Embarcadero Center, Suite 1900
 San Francisco, CA 94111
 Telephone: (415) 576-0200
 Facsimile: (415) 576-0300
 Email: smoore@ktslaw.com

 Russell A. Korn
 Joshua H. Lee
 Christopher S. Leah
 **KILPATRICK TOWNSEND & STOCKTON LLP**
 1100 Peachtree Street NE, Suite 2800
 Atlanta, GA 30309
 Telephone: (404) 815-6500
 Facsimile: (404) 815-6555
 Email: rkorn@ktslaw.com
 Email: jlee@ktslaw.com
 Email: cleah@ktslaw.com

 Kasey E. Koballa
 **KILPATRICK TOWNSEND & STOCKTON LLP**
 4208 Six Forks Road
 Raleigh, NC 27609
 Telephone: (919) 420-1700
 Facsimile: (919) 420-1800
 Email: kkoballa@ktslaw.com

 Melissa R. Smith
 Texas State Bar No. 24001351
 melissa@gillamsmithlaw.com
 **GILLAM & SMITH, LLP**
 303 South Washington Avenue
 Marshall, Texas 75670
 Telephone: (903) 934-8450
 Facsimile: (903) 934-9257

 *Attorneys for Defendant Lenovo Group Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2025, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Steven D. Moore*
Steven D. Moore

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that this Reply is authorized to be filed under seal pursuant to the June 24, 2024, Protective Order (Dkt. 32).

*/s/ Steven D. Moore*
Steven D. Moore
