# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> LENOVO GROUP LIMITED. <br><br> Defendant. | Case No. 2:23-cv-00449-JRG |

**DEFENDANT LENOVO GROUP LIMITED'S RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE LENOVO'S COMPLIANCE WITH MOTION TO COMPEL**

I.      **INTRODUCTION**

Defendant has fully complied with the Court's Order of October 2, 2024 (Dkt. 44, "Order"). UCT's motion to "Enforce Compliance" with the Order is a misnomer, and the motion itself appears to have been filed solely as a response to Defendant Lenovo Group Limited ("LGL")'s Motion to Strike UCT's Infringement Contentions (Dkt 77).

The Order held that LGL had control of and must produce documents and information within the possession of its subsidiaries. LGL complied with the Order by having its subsidiaries provide fulsome discovery, including at least 11,000 distinct pieces (*i.e.*, cells) of component information, on nearly 700 different accused products. *See* Dkt. 78-21. To be clear, LGL is not withholding ***any*** documents or information on the ground that they are in the possession, custody or control of a subsidiary. Therefore, UCT's decision to frame this dispute as one seeking compliance with the Court's Order is inaccurate at best.

Rather, UCT's present motion concerns a different issue—the proper scope of the accused products it has identified in this case. In particular, UCT seeks discovery on ***hundreds*** of additional products that contain a licensed Intel processor, even though: (1) UCT's Complaint represents it has ***not*** accused those products of infringement in view of the license to Intel; and (2) UCT failed to provide any specific infringement theory as to why these Intel-based products allegedly infringe and are not licensed in its Infringement Contentions. Accordingly, LGL filed a Motion to Strike UCT's Infringement Contentions both generally and as to these Intel-based products. *See* Dkt. 77. The Court's prior Order necessarily addressed none of these issues, because LGL's Motion to Strike was the first time they were presented for the Court's consideration. UCT's reactionary "Enforce Compliance" motion with respect to these Intel-based products should thus be denied both procedurally (because it does not relate to compliance with the Order) and on the merits.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     UCT's Complaint

UCT alleges that Lenovo-branded products that support certain DisplayPort™ and USB standards infringe eight U.S. patents (collectively, the "Asserted Patents"). *See* Dkt. 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90. UCT's Complaint, however, affirmatively recognizes that many Lenovo-branded products are covered by a license granted by UCT's parent company, Wi-LAN Inc. In particular—and for each Asserted Patent—UCT affirmatively represents that its "identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and Wi-LAN." Dkt 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90.

### B.     UCT's Infringement Contentions

Despite this, UCT's Infringement Contentions indiscriminately list more than 1,500 Lenovo products as "Accused Products" without ***any*** product-by-product analysis—and without regard to whether those products use Intel components. *See* Dkt. 78-2. According to UCT, UCT's "[c]laim charts" served with its contentions identify the location of "every element of every asserted claim" within each of the hundreds of Accused Products. Dkt. 78-1 at 3. But the charts do no such thing. As discussed in LGL's Motion to Strike (Dkt. 77), each chart, at most, purports to link disparate portions of an accused standard to asserted claims. *See* Dkt. 77 at 3–4.

Moreover, UCT's identification of Accused Products in its Infringement Contentions includes 924 Lenovo-branded products that UCT concedes include at least an Intel processor as well as, in some cases, Intel graphics cards and other components (the "Intel-Based Products"). *See* Dkt. 78-2; *see also* Dkt. 77 at 1–2. UCT's Infringement Contentions, however, are devoid of any discussion or analysis of why these Intel-Based Products infringe despite "the license between Intel Corporation and Wi-LAN" cited in UCT's Complaint as directly limiting the scope of

2

Accused Products. *See* Dkt 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90. Indeed, UCT's claim charts are devoid of any analysis of any Intel-Based Product at all. *See* Dkt. 77 at 3–4; *see* Dkt. 78-4–78-12.

### C. UCT's Discovery Requests

On June 12, 2024, UCT served numerous discovery requests on LGL seeking, *inter alia*, myriad information regarding numerous different components included in the 1,500+ Accused Products identified by UCT in its Infringement Contentions. *See* Dkt. 85-2. These requests included UCT's Interrogatory No. 3—the sole request at issue in UCT's Motion—which sought information on "any power delivery controllers" used in the Accused Products. Dkt. 85-2 at 2.

On July 29, 2024, LGL objected to UCT's discovery requests on various grounds, including to the extent UCT sought discovery on products "covered by an existing license" and thus "not relevant to any party's claim or defense." **Ex. 1** at 7. With respect to Interrogatory No. 3, LGL further objected to the phrase "responsible for the … functionality" used therein, because "Plaintiff has failed to identify in its Infringement Contentions any particular component as being responsible for the accused functionality." **Ex. 1** at 13. And overall, but subject to its objections, LGL responded that it did not have any responsive information in its possession, custody, or control because "LGL is a holding company that does not make, use, offer for sale, or sell any products in the United States …." **Ex. 1** at 14.

On August 6, 2024, UCT filed a motion to compel LGL to provide discovery within the possession of LGL's wholly-owned subsidiaries, namely Lenovo (United States) Inc. ("Lenovo US"). *See* Dkt. 34. On October 2, 2024, the Court granted UCT's motion and ordered to LGL to "respond to UCT's interrogatory requests based on information within the possession, custody, or control of LGL and/or any of its subsidiaries." Dkt. 44 at 3.

In accordance with the Court's Order, on October 11, 2024, LGL (including via subpoena to its subsidiary, Lenovo US) provided responsive information to UCT's Interrogatories, including

3

information on numerous components in nearly 700 Lenovo-branded, non-Intel-based products. *See* Dkt. 78-20; Dkt. 78-21. LGL's responses (including with respect to UCT's Interrogatory No. 3) expressly "account[ed] for the affirmative representation in UCT's Complaint (*see, e.g.*, Dkt. 1, ¶¶ 15, 26, 37, 48, 59, 70, 79, 90) that UCT does not 'intend[] to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and Wi-LAN.'" Dkt. 78-20 at 17. As such, LGL did not provide information in response to UCT's Interrogatory No. 3 for any of the Intel-Based Products.

Under the guise of a motion to enforce the Order, UCT now seeks to compel LGL to provide such discovery on hundreds of Intel-Based Products despite affirmative disclaimers in UCT's Complaint as well as UCT's failure to articulate any specific infringement theory with respect to Intel-Based Products. But the Order did not address the issues raised here (because they were not presented to the Court for its consideration until LGL filed its Motion to Strike on January 21, 2025 (Dkt. 77), and thus this is not an issue of enforcement.

### III.     ARGUMENT

#### A.     LGL Has Not Violated the Court's Order (Dkt. 44)

UCT's statement that the Order required LGL "to respond to UCT's Interrogatory Request No. 3 by identifying the supplier and model number for the power deliver[ry] controllers" in each of the 1,500+ Accused Products identified by UCT (Dkt. 84 at 1) is a misrepresentation of the Order. In pertinent part, the Court ordered LGL to—and LGL did—"respond to UCT's interrogatory requests based on information within the possession, custody, or control of LGL and/or any of its subsidiaries." Dkt. 44 at 3. The Order did ***not*** adjudicate the substantive scope of discovery with respect to the 1,500+ "Accused Products" identified by UCT in its Infringement Contentions. And the Court has not addressed whether discovery is proper into the Intel-Based Products in light of UCT's affirmative statements in the Complaint concerning the Intel license

4

and UCTs failure to set forth any specific infringement theory in UCT's Infringement Contentions as to why any of the Intel-based Accused Products infringes despite that license. *See* Dkt 44.

        **B.**       **The Requested Discovery on Intel-Based Products is Not Relevant**

As set forth in LGL's Motion to Strike (Dkt. 77), UCT's request for discovery on the Intel-Based Products is not relevant to any party's claims or defenses because UCT has not set forth any specific infringement theory as to these Intel-Based Products, as required by P.R. 3-1, and in light of UCT's own representations concerning the Intel license. UCT's arguments otherwise fail.

First, UCT's suggestion that the requested discovery is relevant simply because "[t]he Intel Products were identified by UCT in its list of accused products served … with UCT's infringement contentions" (Dkt. 84 at 4) incorrectly elevates form over substance. A plaintiff cannot interject a product (let alone hundreds of products) into a case and demand discovery on the same simply by listing the product(s) in its infringement contentions. Rather, to properly bring a purported accused product within the scope of discovery, the plaintiff must "identify[] specifically where each element of each asserted claim is found" in that product. P.R. 3-1(c). UCT has failed to satisfy this requirement with respect to the Intel-Based Products, as explained in LGL's Motion to Strike (Dkt. 77). Moreover, UCT's identification of the 924 Intel-Based Products in its list of "Accused Products" is especially insufficient here in view of UCT's earlier affirmative statements that its "identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and Wi-LAN." Dkt 1, ¶¶15, 26, 37, 48, 59, 70, 80, 90.

Second, UCT's argument that a "purported license defense" (Dkt. 84 at 6) does not render the discovery irrelevant is misleading and ignores material facts here. UCT—not LGL—affirmatively recognized, in its Complaint, that the scope of its infringement theories as to each Asserted Patent was limited by and must account for the Intel license. Dkt 1, ¶¶15, 26, 37, 48, 59,

5

70, 80, 90. Yet UCT's Infringement Contentions fail to even acknowledge the Intel license, let alone account for the license by articulating an infringement theory as to Intel-Based Products. Rather, UCT's infringement theories as to the Intel-Based Products are based on UCT's claim charts that merely link the accused standards to the asserted claims. Such generalized theories, which fail to account for the Intel license that UCT concedes restricts its infringement allegations, are insufficient. *See Linex Technologies, Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 709 (E.D. Tex. 2008) ("Where—as here—an industry standard fails to delineate details which are critical to an assertion or determination of infringement, such a standard will not, alone, suffice as the basis for Infringement Contentions required by this Court's Patent Rules.")

Third, UCT's conclusory statement that the requested discovery is relevant because "the power delivery controllers provide the Intel Products with the infringing functionality" as to the '712 Patent and '265 Patent (Dkt. 84 at 5) is unavailing for multiple reasons. Fundamentally, this theory appears nowhere in UCT's Infringement Contentions. Moreover, this newly-disclosed theory is premised on UCT's incorrect contention that "the Intel Agreement only applies if the Intel processor is providing substantially all, or a majority of, the functionality ***recited in the asserted patent claim***—which is not the case for at least the asserted '712 and '265 Patents." Dkt. 84 at 7 (emphasis added). This contention also appears nowhere in UCT's Infringement Contentions and, in any event, is directly contrary to the Intel license. ███████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████ Dkt. 78-17, § 1.7(iii) (emphasis added). UCT should not be permitted to manufacture an argument regarding relevance with respect to two Asserted Patents

6

based on a newly disclosed rewrite of the Intel license, which contradicts UCT's representations in its Complaint regarding the applicability of the license as to every one of the Asserted Patents.

### C. The Requested Discovery on Hundreds of Intel-Based Products Is Not Proportional to the Needs of the Case

As discussed, LGL has already provided UCT with extensive, voluminous discovery for nearly 700 (non-Intel based) Accused Products. *See* Dkt. 78-20, 78-21. UCT's requested discovery on **hundreds** of additional Intel-Based Products [1] is not only irrelevant, but also unduly burdensome and disproportionate to the needs of the case.

"[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case," including considering, *inter alia*, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *TravelPass Grp., LLC v. Caesars Ent. Corp.*, No. 5:18-CV-153-RWS-CMC, 2020 WL 698538, at *3 (E.D. Tex. Jan. 16, 2020). Such is the case here. The burden associated with LGL providing discovery on hundreds of Intel-Based Products outweighs the likely benefit of the discovery, given UCT's disclaimers in UCT's Complaint regarding such products and that UCT has not set forth any infringement theory for these hundreds of Intel-Based Products as required by P.R. 3-1 (including in view of the Intel license), as explained in LGL's Motion to Strike (Dkt. 77).

### IV. CONCLUSION

For all these reasons, UCT's Motion (Dkt. 84) should be denied.

---

[1] UCT originally identified 924 Intel-Based Products in its Infringement Contentions but has since apparently reduced that to only 487 Intel-Based Products. *See* Dkt. 87 at 12. UCT, however, has not formally dropped any of the remaining 437 Intel-Based Products from this case.

| | |
|---|---|
| Dated: February 11, 2025 | Respectfully Submitted,<br><br>/s/ Steven D. Moore<br>Steven D. Moore<br>**KILPATRICK TOWNSEND & STOCKTON LLP**<br>Two Embarcadero Center, Suite 1900<br>San Francisco, CA 94111<br>Telephone: (415) 576-0200<br>Facsimile: (415) 576-0300<br>Email: smoore@ktslaw.com<br><br>Russell A. Korn<br>Joshua H. Lee<br>Christopher S. Leah<br>**KILPATRICK TOWNSEND & STOCKTON LLP**<br>1100 Peachtree Street NE, Suite 2800<br>Atlanta, GA 30309<br>Telephone: (404) 815-6500<br>Facsimile: (404) 815-6555<br>Email: rkorn@ktslaw.com<br>Email: jlee@ktslaw.com<br>Email: cleah@ktslaw.com<br><br>Kasey E. Koballa<br>**KILPATRICK TOWNSEND & STOCKTON LLP**<br>4208 Six Forks Road<br>Raleigh, NC 27609<br>Telephone: (919) 420-1700<br>Facsimile: (919) 420-1800<br>Email: kkoballa@ktslaw.com<br><br>Melissa R. Smith<br>Texas State Bar No. 24001351<br>melissa@gillamsmithlaw.com<br>**GILLAM & SMITH, LLP**<br>303 South Washington Avenue<br>Marshall, Texas 75670<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br><br>*Attorneys for Defendant Lenovo Group Limited* |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2025, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Steven D. Moore*
Steven D. Moore

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that this Response is authorized to be filed under seal pursuant to the June 24, 2024, Protective Order (Dkt. 32).

*/s/ Steven D. Moore*
Steven D. Moore