# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> LENOVO GROUP LIMITED, <br><br> Defendant. | Case No. 2:23-cv-00449-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO AMEND DOCKET CONTROL ORDER**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ........................................................................ 3

    A. UCT's Efforts to Obtain Discovery from LGL Regarding LGL's Third-Party Suppliers and Their Components ................................................................................. 3

    B. UCT's Third-Party Subpoenas to Obtain Documents and Source Code ................... 4

    C. LGL Agreed to Supplemental Protective Orders Regarding Source Code Information from LGL's Third-Party Suppliers ......................................................... 5

    D. UCT Promptly Produced All Technical Documents Received from LGL's Third-Party Suppliers in Accordance with the Court's Discovery Order .................. 6

    E. LGL's Motion to Amend the Docket Control Order ................................................. 6

III. LEGAL STANDARD .......................................................................................................... 7

IV. ARGUMENT ....................................................................................................................... 8

    A. LGL Was Not Diligent In Seeking A Revised Case Schedule ................................... 8

        1. LGL waited two months after it learned of third-party source code review to seek a case adjustment ...................................................................................... 8

        2. LGL has been on notice that UCT would be relying on source code as evidence of infringement ................................................................................... 10

    B. LGL's Requested Modification Is Not Important ..................................................... 11

    C. UCT Is Unduly Prejudiced By Changing The Trial Date ........................................ 12

    D. UCT's Alternative Proposal Negates The Need For A Continuance ....................... 15

V. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Empire Tech. Dev. LLC v. Samsung Elecs. Co. Ltd.*,
  No. 2:23-cv-00427-JRG-RSP, Dkt. No. 89 (E.D. Tex. Feb. 7, 2025) ................................... 11

*Estech Sys. IP, LLC v. Mitel Networks, Inc.*,
  No. 2:21-CV-00473-JRG-RSP, 2023 WL 3262035 (E.D. Tex. May 4, 2023) ........................ 9

*GREE, Inc. v. Supercell Oy*,
  No. 2:19-cv-00310-JRG, 2021 WL 603727 (E.D. Tex. Feb. 16, 2021) .................................. 9

*GREE, Inc. v. Supercell Oy*,
  No. 2:19-CV-00311-JRG, 2021 WL 603726 (E.D. Tex. Feb. 16, 2021) ......................... 14, 15

*Headwater Research LLC v. Samsung Elecs. Co., Ltd.*,
  No. 2:23-cv-00103-JRG-RSP, 2024 WL 5080240 (E.D. Tex. Dec. 11, 2024) ..................... 14

*Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*,
  No. 2:21-CV-00113-JRG, 2022 WL 17484264 (E.D. Tex. July 7, 2022) ............................. 14

*MacroSolve, Inc. v. Antenna Software, Inc.*,
  No. 6:11-CV-287-MHS-JDL, 2013 WL 3833079 (E.D. Tex. July 23, 2013) ................. 12, 13

*MyPort, Inc. v. Samsung Elecs. Co.*,
  No. 2:22-CV-00114-JRG, 2023 WL 8188739 (E.D. Tex. Nov. 27, 2023) .......................... 8, 9

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
  No. 2:13CV213-JRG-RSP, 2015 WL 627887 (E.D. Tex. Jan. 29, 2015) ............................. 14

*Seven Networks, LLC v. Google LLC*,
  No. 2:17-CV-00442-JRG, 2018 WL 4501952 (E.D. Tex. July 11, 2018) ............................. 13

*Tech Pharmacy Servs., LLC v. Alixa Rx LLC*,
  No. 4:15-CV-766, 2017 WL 2833460 (E.D. Tex. Jan. 19, 2017) ............................................ 9

*Trover Grp., Inc. v. Dedicated Micros USA*,
  No. 2:13-CV-1047-WCB, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) ............................ 13

I.      INTRODUCTION

Defendant Lenovo Group Limited's ("LGL") Motion to Amend the Docket Control Order by three months should be denied. Dkt. 124 ("Mot."). LGL manufactures good cause for its requested three-month trial delay (and related deadline extensions) based on an overstated, incomplete, and misleading presentation of the record. As a reasonable accommodation during the meet and confer process, Plaintiff Universal Connectivity Technologies, Inc. ("UCT") suggested an extension of fact discovery by 4 weeks to provide LGL additional time to review source code (and provide discovery to UCT which LGL has withheld based on UCT's Amended Infringement Contentions). UCT's proposal as provided to LGL is attached as Exhibit A. However, LGL did not accept the proposal, and instead, seeks to move the trial date by three months. LGL's Motion should be rejected and UCT's alternative proposal should be adopted.

First, LGL argues an extension is justified because UCT did not notify LGL that LGL's third-party suppliers made source code available for inspection. LGL claims that UCT "impermissibly withheld a large amount" of source code but omits the fact that UCT does not now, nor did it ever, "possess" the source code of LGL's suppliers—the source code was only made available to UCT for inspection pursuant to the restrictions in the Protective Order (Dkt. No. 32) and various supplemental protective orders requested by the suppliers. To the extent any of those suppliers produced relevant technical documents, UCT produced those immediately to LGL pursuant to Section 5(f)(b) of the Court's Discovery Order.

Incredibly, LGL claims it was unaware that UCT was inspecting source code from LGL's third-party suppliers. Putting aside the likely internal communications between LGL and its suppliers about this case, in August 2024, UCT moved to compel the production of documents and answers to interrogatories to "pursue third-party discovery from LGL's suppliers." Dkt. No. 34 at 7. In response, LGL argued that the necessary "source code" was "in the possession of the

third-party suppliers" and that "UCT undoubtedly recognizes this, as it has already served subpoenas on several of those suppliers." Dkt. No. 39 at 7. Indeed, most of the third-party suppliers required UCT to negotiate and enter supplemental protective orders prior to reviewing any source code—a process that required LGL's input and consent. *See, e.g.*, Dkt. No. 57 (Nov. 20, 2024 Mot. for Entry of Supplemental PO). And, UCT was often required to seek additional information from LGL in connection with questions from the third parties, further evidencing that LGL was always aware of UCT's pursuit of source code from LGL's suppliers.

Irrespective of whether UCT was required to provide separate notice to LGL when UCT's experts actually reviewed source code[1], LGL admits that it was aware source code was available for inspection as early as March 11, 2025. At that time, there was approximately *10 weeks* left in fact discovery before the May 30th discovery deadline. Dkt. No. 27. Yet, LGL waited another *two months* before filing the instant Motion. Under these circumstances, LGL cannot show that it was diligent in seeking the requested extension, which negates a finding of good cause.

Second, LGL argues UCT's Amended Infringement Contentions, which now contain source code to comply with the Court's Order, warrant a three-month trial extension. However, UCT has always maintained that it would be relying on source code as evidence of infringement. UCT's Amended Infringement Contentions have now added that additional source code evidence to its pre-existing infringement theories—theories that LGL knew about before this case was even filed. Again, UCT's proposed 4-week extension provides LGL with sufficient time to analyze the source code evidence included in UCT's amended infringement contentions.

---

[1] Two additional points should be recognized: (1) UCT's experts spent many hours working with LGL's suppliers to gather complete sets of source code streamlining future reviews and (2) UCT's experts and LGL's experts could not perform source code review at the same time, so providing notice would serve little purpose because LGL must arrange its own review.

As explained below, LGL's three-month delay of the trial (and related deadlines) is not justified. LGL has more than sufficient time to review the collected and available source code in the next two months under the reasonable proposal that UCT suggested.

## II. RELEVANT FACTUAL BACKGROUND

### A. UCT's Efforts to Obtain Discovery from LGL Regarding LGL's Third-Party Suppliers and Their Components

On May 15, 2024, UCT served its initial infringement contentions on LGL. Declaration of Brett Cooper ("Cooper Decl.") at ¶ 2. UCT's initial contentions cited to portions of certain standards documents to provide LGL notice of its infringement theories. *Id.* However, UCT's initial contentions made clear that "UCT's citation of portions of the standards documents in its claim charts should not be interpreted to limit UCT's infringement proof in expert reports or at trial in any way." Ex. B (UCT IC Cover Pleading) at 4 (emphasis added). UCT further explained that it "intends to rely on additional evidence including, but not limited to, data sheets, design specifications, <u>source code</u>, testing information, reference designs, implementation and utilization information, and/or schematics as proof of infringement in expert reports and at trial."[2] *Id.*

On June 14, 2024, UCT served its First Set of Interrogatories on LGL requesting, among other information, the identity, by supplier, model name, and model number of various components in LGL's Accused Products. Cooper Decl. ¶ 3. This information was immediately necessary for UCT to proceed with discovery, as UCT understood that most of the relevant technical documents and source code are possessed by LGL's component suppliers. LGL responded to UCT's First Set of Interrogatories on July 29, 2024, but refused to provide any substantive responses—largely arguing that it was not required to participate in fact discovery pending resolution of its Motion to

---

[2] All emphasis added unless stated otherwise.

- 3 -

Dismiss for lack of personal jurisdiction. *Id.* ¶ 4. Consequently, on August 6, 2024, UCT filed a Motion to Compel requesting, in relevant part, answers to its interrogatories related to the third-party supplier component information. Dkt. No. 34.

On October 2, 2024, the Court granted UCT's Motion to Compel and required LGL to provide responses to UCT's interrogatories by October 11, 2024. Dkt. No. 44. Notably, in responding to UCT's Motion to Compel, LGL confirmed that the relevant source code is in the possession of LGL's third-party suppliers. Dkt. No. 39 at 7 ("To the extent that materials such as 'source code, specifications, schematics,' and similar documents exist for those components [ ] they are in the possession of the third-party suppliers."). On October 11, 2024, LGL provided supplemental responses to UCT's interrogatories, including an Appendix detailing information about the third-party components in LGL's Accused Products. Cooper Decl. ¶ 5.

Thereafter, in October 2024, UCT requested LGL's permission to disclose the component part information provided in LGL's Appendix to LGL's third-party supplier AMD. Ex. C (Hasenour 10-14-24 Email). Throughout the next few months, UCT and LGL communicated regarding specific requests for additional information from LGL's suppliers in connection with UCT's subpoenas. *See, e.g.*, Ex. D (Hasenour 12-13-24); Ex. E (Hasenour 02-06-25). The parties also continued to meet and confer regarding deficiencies in LGL's Appendix, notwithstanding the Court's prior Order. Despite UCT's attempts to reconcile the deficiencies in LGL's Appendix, on January 28, 2025, UCT ultimately had to file a Motion to Enforce Compliance with the Court's Order on UCT's Motion to Compel. Dkt. No. 84. Only after UCT filed its Motion to Enforce LGL's Compliance with the Motion to Compel, LGL agreed to correct certain deficiencies and serve an amended Appendix. Cooper Decl. ¶ 6. Consequently, UCT withdrew its Motion. *Id.*

    **B.**    **UCT's Third-Party Subpoenas to Obtain Documents and Source Code**

On June 24, 2024, UCT served document subpoenas on the following LGL third-party component suppliers: AMD, Genesys, Mediatek, NVIDIA, Parade, Synaptics, and VIA. *See, e.g.,* Dkt. 124-1, Exs. 4-10. Each subpoena requested source code and technical documents sufficient to show the operation of the accused features in the components supplied to LGL by the third-party supplier. For example, UCT's subpoena to AMD requested:

> 1. *Source code* sufficient to show the operation of the Accused Features for each of the AMD Chipsets, including the source code for hardware design and specification language descriptions, such as SDL, HDL, VHDL, iHDL, Verilog, System Verilog, or RTL, and the source code for higher software programming design languages, such as C and C++ programming languages.
>
> 2. Technical documents sufficient to show the operation of the Accused Features for each of the AMD Chipsets that AMD has supplied to Lenovo.

Dkt. 124-1, Ex. 4 at 7-8 (emphasis added). UCT served similar subpoenas in October and November 2024 on other LGL third-party suppliers. Dkt. 124-1, Exs. 11-16. UCT promptly provided LGL with notice before each subpoena was served. Cooper Decl. ¶ 7.

### C. LGL Agreed to Supplemental Protective Orders Regarding Source Code Information from LGL's Third-Party Suppliers

On November 19, 2024, UCT notified LGL that TI requested a supplemental protective order covering, in relevant part, what the producing party may designate as source code under paragraph 1(a) of the Protective Order (Dkt. No. 32). Cooper Decl. ¶ 8. LGL confirmed that it did not oppose the request. *Id.* The Supplemental Protective Order addressing TI's confidential information (including source code) was entered by the Court. Dkt. No. 58.

In November 2024, December 2024, and February 2025, UCT and LGL engaged in that same exercise *five more times* for other supplemental protective orders from LGL suppliers. Dkt. Nos. 61, 73, 76, 91, and 119. Some of the supplemental protective orders were aimed at addressing additional source code protections above and beyond those in the operative protective order in this

case. *See, e.g.,* Dkt. No. 73 at Section B ("Modifications to the Protective Order"). LGL did not oppose abiding by those restrictions. *Id.*

### D. UCT Promptly Produced All Technical Documents Received from LGL's Third-Party Suppliers in Accordance with the Court's Discovery Order

Paragraph 5(f)(b) of the Court's Discovery Order (Dkt. No. 26) states "[w]ith respect to third-party discovery, the parties agree to produce documents within seven (7) days of receipt of the documents from the third party." Dkt. No. 26 at 5(f)(b). Each time UCT received technical documents in response to its third-party subpoenas, it ensured that LGL promptly received those documents within the required seven-day window:

| Third-Party Supplier | Dates | Bates Range |
|---|---|---|
| AMD | 09-27-24 | UCT-AMD-00000001 - UCT-AMD-00101260 |
| | 10-07-24 | UCT-AMD-00101261 - UCT-AMD-00149293 |
| Genesys | 03-05-25 | GLI-0001 - GLI-0212 |
| | 05-06-25 | GLI-0213 – GLI-0852 |
| Mediatek | 10-25-24 | MEDIATEK_00000001 - MEDIATEK_00005154 |
| NVIDIA | 10-25-24 | NV44900000001 - NV44900000861 |
| | 12-20-24 | NV44900000862 - NV44900004371 |
| | 02-11-25 | NV44900004372 - NV44900014897 |
| Parade | 02-27-25 | PT-0000001 - PT-0000224 |
| | 05-13-25 | PT-0000225 - PT-0002639 |
| Synaptics | 11-19-24 | SYN_000000001 - SYN_000006707 |
| | 11-20-24 | SYN_000006708 - SYN_000006712 |

Cooper Decl. ¶ 9.

### E. LGL's Motion to Amend the Docket Control Order

LGL represents that it first learned that its third-party suppliers made source code available for UCT to review during a phone conversation that it had with AMD on March 11, 2025.[3] Mot. at 7. On March 12, 2025, LGL inquired with UCT whether UCT had reviewed any source code to date. Ex. F (Lee 03-12-25). UCT promptly responded on March 13, 2025 with a detailed email listing the various third-party suppliers that had made code available, the dates that source code

---

[3] LGL concedes that it was in contact with its third-party suppliers. Mot. at 7.

- 6 -

was first made available, the location of the source code inspection, contact information for inspection of the source code, the date UCT received source code printouts that it requested, and the bates range for those printouts. Ex. G (Ratycz 03-13-25). Notwithstanding the fact that LGL was aware its suppliers were providing discovery to UCT, UCT also ensured that counsel for LGL was included on communications with the third-party suppliers from thereon.

According to LGL, an extension of the case schedule was warranted because UCT performed initial reviews of the source code without first notifying LGL. Specifically, on April 7, 2025, LGL stated that it intended to file a Motion to Amend the Docket Control Order to extend the deadline to complete fact discovery by three (3) months, from May 30, 2025, up to and through August 29, 2025, including extensions to all subsequent deadlines such as trial. Ex. H (Lee 04-07-25). The parties held a meet and confer to discuss LGL's requested extension on April 10, 2025. Cooper Decl. ¶ 10. Later that same day, UCT offered a compromise to LGL's requested extension whereby the parties would agree to a four-week extension to the fact discovery deadline but that the trial date would remain the same. Ex. I (Cooper 04-10-25). Two weeks later, on April 23, 2025, LGL sent UCT its proposed draft Amended Docket Control Order, and on April 28, 2025, UCT reiterated its proposal to add time to the fact discovery period but to maintain the trial date. Cooper Decl. ¶ 11. Thereafter, LGL filed the instant Motion on May 9, 2025.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 16(b) provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." "There are four factors this Court considers when determining whether there is good cause to grant such relief: (1) the explanation for the failure to meet the deadline; (2) the importance of the modification of the deadline; (3) any potential prejudice from

allowing the modification; and (4) the availability of a continuance to cure any such prejudice." *MyPort, Inc. v. Samsung Elecs. Co.*, No. 2:22-CV-00114-JRG, 2023 WL 8188739, at *2 (E.D. Tex. Nov. 27, 2023).

## IV.     ARGUMENT

LGL fails to demonstrate that any of the four factors for evaluating the existence of good cause weigh in favor of the requested extension. Indeed, LGL does not provide a factor-specific analysis in arriving at its conclusion that a delay of the trial by three months is supported by good cause. Neither of LGL's two grounds: (1) lack of source code review notice as to LGL's third-party suppliers; and (2) the inclusion of source code citations in UCT's amended infringement contentions, provides a basis for the relief requested. If LGL requires additional time, UCT's proposal provides 4 additional weeks to conduct fact discovery without changing the trial date.

### A.     LGL Was Not Diligent In Seeking A Revised Case Schedule

#### 1.     LGL waited two months after it learned of third-party source code review to seek a case adjustment

LGL wrongly maintains that UCT somehow "withheld" the production of source code from *LGL's own suppliers* as a basis for the requested extension. As an initial matter, UCT does not currently, nor did it ever, "possess" the source code of LGL's suppliers—the source code was made available to UCT for inspection and is still possessed by LGL's suppliers. Indeed, the governing Protective Order (Dkt. No. 32)—as well as the additional supplemental protective orders requested by LGL's suppliers—outlines the specific procedures required for inspection of source code including that "no electronic copies of Source Code Material shall be made." Dkt. No. 32 at ¶ 10.[4] Further, to the extent any of LGL's suppliers produced technical documents in

---

[4] LGL complains that it did not receive the source code printouts that UCT requested from the third-party suppliers after UCT reviewed the source code. Mot. at 7. Contrary to LGL's arguments, UCT was never able to simply make copies of the printouts and provide them to LGL or else UCT

- 8 -

response to UCT's subpoenas, UCT made those documents immediately available to LGL as required by the Discovery Order.  Cooper Decl. ¶ 9; *see supra* at Section II.D.  In sum, the source code was never "produced" to UCT (it was only made available by certain suppliers for review), UCT never "withheld" any source code because UCT never possessed it in the first place, and UCT was not permitted, under the protective orders, to make copies of the printouts that it received.

LGL admits that it learned that its suppliers made source code available for inspection on March 11, 2025.  Mot. at 7.  The deadline for fact discovery is May 30th—meaning LGL learned that source code was available approximately *10 weeks* prior to the fact discovery deadline.  LGL does not provide any explanation of why it did not seek an adjustment of the case deadlines from the Court at that time (mid-March 2025) or in the proceeding two months it took LGL to file the instant motion.  Indeed, LGL indicated to UCT as early as April 7, 2025 that it would pursue a three-month extension on this basis.  Ex. H (Lee 04-07-25).  Yet, LGL then waited another month before seeking relief from the Court.  LGL was not diligent in seeking the requested relief.  *See, e.g.*, *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-CV-766, 2017 WL 2833460, at *4 (E.D. Tex. Jan. 19, 2017) ("even under Defendants' timeline, the two-month delay in notifying Plaintiff and/or the Court in which Defendants were preparing the proposed amendment does not demonstrate diligence.").  Here, "the lack of diligence alone is sufficient to deny Defendants' motion[.]" *Estech Sys. IP, LLC v. Mitel Networks, Inc.*, No. 2:21-CV-00473-JRG-RSP, 2023 WL 3262035, at *2 (E.D. Tex. May 4, 2023); *MyPort*, 2023 WL 8188739, at *3 ("Since the Court finds

---

would have been in violation of the Protective Order. UCT understands that LGL has already obtained, or is in the process of obtaining, these exact same source code print outs from its own suppliers. Accordingly, there has been no harm to LGL.  *Cf.*, *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00310-JRG, 2021 WL 603727, at *3 (E.D. Tex. Feb. 16, 2021) (refusing to strike certain late produced source code where opposing party had an opportunity to analyze that source code and recognizing that such late disclosure was "substantially justified or harmless" "given the third-party constraints on gathering source code printouts and production").

- 9 -

that Samsung was not diligent, it does not address the good cause factors.").

### 2. LGL has been on notice that UCT would be relying on source code as evidence of infringement

LGL was also not diligent in seeking an amended case schedule based on UCT's citation to source code in its May 6, 2025 Amended Infringement Contentions. Throughout the entirety of this case, UCT has always made it clear that it would be seeking technical discovery (including source code) as evidence of LGL's infringement of the Asserted Patents. For example, UCT's original infringement contentions, served on May 15, 2024, expressly noted that its "citation of portions of the standards documents in its claim charts should not be interpreted to limit UCT's infringement proof in … any way" and that "UCT intends to rely on additional evidence including, … source code … as proof of infringement in expert reports and at trial." Ex. B (IC Cover Pleading) at 4. Along those lines, UCT issued a litany of subpoenas to LGL's third party suppliers, notified LGL of those subpoenas, and those subpoenas expressly sought the production of source code. *See, e.g.,* Dkt. 124-1, Ex. 4 at 7-8 (requesting "source code sufficient to show the operation of the Accused Features"). Indeed, UCT had to move to compel additional information from LGL to assist in its efforts to obtain the relevant source code, entered into numerous supplemental protective orders (with LGL's consent and acknowledgement) governing the production of the relevant source code, and UCT routinely corresponded with LGL concerning follow-up questions from LGL's suppliers. *See supra* at 3-6. And, LGL admits that it was also communicating separately with its suppliers regarding the discovery in this matter. Dkt. 124-1 ¶ 21. Accordingly, LGL was aware of UCT's pursuit of source code from its suppliers throughout the entirety of this action and should have diligently prepared its defenses to account for UCT's reliance on source code as evidence of infringement.

In addition, UCT again explained that it sought to prove LGL's infringement through technical evidence (and not reliance on LGL's use of industry standards, such as USB-C) in its opposition to LGL's Motion to Strike UCT's Infringement Contentions, filed on February 4, 2025. Specifically, UCT explained that "it plans to prove infringement with additional evidence, such as source code, and is not solely relying on the fact that LGL's Accused Products practice the various cited standards to prove infringement." Dkt. No. 87 at 10; *id.* at 2. To that end, LGL was certainly on notice that any amended infringement contentions resulting from its Motion to Strike would include evidence of infringement based on source code. Yet, LGL did not seek the requested extension after the Court's April 15th Order requiring UCT to serve amended infringement contentions, despite UCT's clear explanation that it would rely on source code to prove infringement. Dkt. No. 115. This is especially true when, at that point, LGL had already indicated it would be seeking a three-month extension to all outstanding case deadlines. LGL cannot show diligence based solely on the inclusion of source code evidence in UCT's Amended Infringement Contentions. *See Empire Tech. Dev. LLC v. Samsung Elecs. Co. Ltd.*, No. 2:23-cv-00427-JRG-RSP, Dkt. No. 89 at 1 (E.D. Tex. Feb. 7, 2025) (denying Motion to Amend where movant "did not show diligence in inspecting the source code" "once receiving the source code" and further where movant "does not appear to have diligently filed th[e] Motion with the Court").

### B.    LGL's Requested Modification Is Not Important

LGL's requested three-month extension is not important. LGL acknowledges that it began reviewing the relevant third-party source code in early April 2025. Under UCT's proposal, LGL would still have another six weeks (until June 27) to conduct additional source code reviews, which have all been made possible through UCT's months-long efforts to obtain discovery from LGL's suppliers. However, unlike LGL's requested relief, UCT's proposal does not impact the currently

- 11 -

scheduled trial. Because UCT's proposal still affords LGL with an extra month to conduct fact discovery without impacting the scheduled jury trial, LGL's requested extension is not important.

LGL only argues that its requested extension is important given the "significance" of the source code to UCT's infringement allegations. Mot. at 15. While the source code is certainly "significant" to UCT's infringement evidence, that fact alone does not render a three-month delay of the jury trial "important" for establishing good cause. To the extent LGL contends that the extension is important for refining its invalidity theories or other defenses, that argument falls flat. LGL should have been diligently preparing its defenses throughout the case. And, because UCT's infringement theories have not otherwise changed, the citation to source code evidence in UCT's supplemental infringement contentions does not require a complete re-do of LGL's invalidity defenses.[5] Simply put, LGL fails to identify anything specific in UCT's amended infringement contentions—other than the mere use of the source code evidence produced in this case—that renders its amended case schedule "important." *See, e.g.*, *MacroSolve, Inc. v. Antenna Software, Inc.*, No. 6:11-CV-287-MHS-JDL, 2013 WL 3833079, at *4 (E.D. Tex. July 23, 2013) ("Newegg fails to provide how its amendment addresses anything in the supplemental infringement contentions to render it important."). In light of UCT's proposed June 27th deadline to complete fact discovery, LGL still has sufficient time to further refine its defenses.

C. **UCT Is Unduly Prejudiced By Changing The Trial Date**

UCT is unduly prejudiced by a three-month delay to the November 2025 jury trial. LGL largely focuses on the supposed prejudice to itself based on its own failure to diligently seek

---

[5] LGL's argument that UCT has somehow raised "new source code theories" in its amended infringement contentions fails. Mot. at 11. For example, there is nothing inconsistent with UCT's argument that the "logic" recited in U.S. Patent Nos. 7,856,520 and 7,921,231 refers to "logic circuits" and its subsequent citation to source code implemented by *the identified circuitry*.

discovery from its own suppliers—the third-parties LGL has maintained possess the relevant technical documents and source code since the summer of 2024. But the focus of this factor is on the prejudice to *UCT*. *See, e.g.*, *MacroSolve*, 2013 WL 3833079, at *5 ("Defendants fail to show that the amendments to their invalidity contentions would not result in prejudice to [Plaintiff].").

LGL includes a conclusory sentence that UCT is somehow not prejudiced by a three-month extension "given no pending *Inter Partes* Review has been instituted on any asserted patent … and UCT's status as a non-practicing entity." Mot. at 1, 15. This conclusory paragraph hardly satisfies LGL's burden because "[a] lack of prejudice to [UCT], supposing that there was truly no prejudice, is not sufficient to demonstrate good cause without more; to hold otherwise would change the showing from one of good cause to one of no prejudice and absolve the movant from a failure based on harm to the opposing party alone." *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00442-JRG, 2018 WL 4501952, at *4 (E.D. Tex. July 11, 2018).

LGL does not explain how UCT's success in preventing institution on LGL's petitions for *Inter Partes* Review[6] means that UCT is not prejudiced by a three-month delay of the November 2025 jury trial. To the contrary, a delay in the jury trial is prejudicial to UCT's right in the "timely enforcement of [its] patent rights." *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *2 (E.D. Tex. Mar. 11, 2015).

The prejudice to UCT is also not diminished by its status as a "non-practicing entity." "[T]he mere fact that [UCT] is not currently practicing the patents does not mean that, as a matter of law, it is not prejudiced by a substantial delay of an imminent trial date." *Rembrandt Wireless*

---

[6] Nor does LGL take any position with regard to what, if anything, LGL will do in response to the denial of its IPRs such as additional procedural review with the PTAB, "Director's Review", or appeals to the Federal Circuit Court of Appeals. In addition, LGL could file additional IPR challenges and/or seek different review by making *ex-parte* reexam requests.

*Techs., LP v. Samsung Elecs. Co.*, No. 2:13CV213-JRG-RSP, 2015 WL 627887, at *2 (E.D. Tex. Jan. 29, 2015). Rather, "this Court has repeatedly found that a delay in recovering monetary damages is 'far from non-prejudicial' and is entitled to weight …." *Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:21-CV-00113-JRG, 2022 WL 17484264, at *2 (E.D. Tex. July 7, 2022). "All parties have an interest in the timely vindication of their patent rights, regardless of their practicing status." *Headwater Research LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-00103-JRG-RSP, 2024 WL 5080240 at *2 (E.D. Tex. Dec. 11, 2024).

While not necessarily relevant to the Court's analysis, LGL's claims that it has been prejudiced and/or will suffer prejudice without the requested three-month extension of all case deadlines (including the upcoming jury trial) rings hollow. The notion that LGL was unaware until March 11, 2025, that source code from its suppliers was being reviewed is far-fetched given UCT's notice of its intent to rely on code, UCT's subpoenas to the suppliers requesting source code, the supplier's requests for supplemental protective orders addressing source code provisions of the Protective Order, and the parties' communications regarding specific questions from the suppliers. Indeed, LGL admits that it was also separately communicating with its suppliers about ongoing discovery. Dkt. 124-1 ¶ 21. Even if LGL found out about the availability of the source code for the first time on March 11, 2025, LGL still had *10 weeks* to perform its inspection. And, with UCT's proposed 4-week extension, LGL still has plenty of time to complete its review.

For these reasons, LGL's heavy reliance on *GREE v. Supercell* is unpersuasive. Mot. at 11-13. Notably, the defendant in *GREE* ("Supercell") received and physically possessed a flash drive that contained native source code from a third-party produced in response to the defendant's subpoena. *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00311-JRG, 2021 WL 603726, at *1 (E.D. Tex. Feb. 16, 2021). Because the defendant physically possessed the flash drive, it was able to

review EA's source code in native format from the flash drive itself. *Id.* In contrast, here, UCT never received or physically possessed source code from any of LGL's suppliers. Rather, the source code was only made available for UCT's review and subject to the restrictions in the governing protective orders. Because UCT never physically possessed the source code, UCT could never have produced the source code to LGL, especially in light of the restrictions set forth and agreed to by the parties in the Protective Order.

Further, the defendant in *Gree* did not disclose that it had received the flash drive with the native source code for review until the last day of fact discovery. 2021 WL 603726, at *1. Here, LGL allegedly first learned about the existence of source code on March 11, 2025. At that point, there was still approximately 10 weeks until the close of fact discovery on May 30, 2025. *Id.* It remains unclear why 10 weeks was allegedly an insufficient amount of time for LGL to review the source code. The facts in *GREE* are simply not analogous to the facts in this case.

### D. UCT's Alternative Proposal Negates The Need For A Continuance

A continuance of the currently scheduled trial date results in the very prejudice to UCT described above. A continuance is, therefore, unhelpful. Rather, as UCT has already proposed, adjusting the current case deadlines by approximately 4 weeks provides the parties with more than sufficient time to complete fact discovery. Critically, UCT's proposal does not disturb the currently scheduled trial date of November 5, 2025. To that end, the Court should adopt UCT's alternative proposed case schedule, attached hereto as Exhibit A.

### V. CONCLUSION

For the reasons stated above, LGL's Motion should be denied and UCT's alternative proposal adjusting the case deadlines by approximately 4 weeks without changing the currently scheduled trial should be adopted.

Dated: May 15, 2025

Respectfully submitted,

By: */s/ Brett E. Cooper*
Brett E. Cooper (NY SBN 4011011)
bcooper@bc-lawgroup.com
Seth Hasenour (TX SBN 24059910)
shasenour@bc-lawgroup.com
Jonathan Yim (TX SBN 24066317)
jyim@bc-lawgroup.com
Drew B. Hollander (NY SBN 5378096)
dhollander@bc-lawgroup.com
Ashley M. Ratycz (IL SBN 6330321)
aratycz@bclgpc.com
**BC LAW GROUP, P.C.**
200 Madison Avenue, 24th Floor
New York, NY 10016
Tel.: (212) 951-0100
Fax: (646) 293-2201

***Attorneys for Plaintiff Universal Connectivity Technologies Inc.***

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served via electronic mail on May 15, 2025.

*/s/ Brett E. Cooper*
Brett E. Cooper

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned certifies that, pursuant to Local Rule CV-5(7)(A), authorization for filing the foregoing document and/or exhibits thereto under seal has been conveyed through the Protective Order (Dkt. No. 32) entered in this matter.

*/s/ Brett E. Cooper*
Brett E. Cooper