**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> LENOVO GROUP LIMITED. <br><br> Defendant. | Case No. 2:23-cv-00449-JRG |

**DEFENDANT LENOVO GROUP LIMITED'S OPPOSED**
**MOTION TO COMPEL INTERROGATORY RESPONSES**

# **TABLE OF CONTENTS**

I. RELEVANT FACTUAL BACKGROUND ..................................................................... 1

    A. UCT's Patent Licensing Business Model ................................................................ 1

    B. UCT's Deficient Responses to LGL's Interrogatories ............................................. 2

II. LEGAL STANDARD ...................................................................................................... 4

III. ARGUMENT .................................................................................................................... 4

IV. CONCLUSION ................................................................................................................. 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS, LLC v. EMC Corp.*, No. 14-13560-ADB,
   2018 WL 1307650 (D. Mass. Feb. 8, 2018) .............................................................................. 6, 7

*Emerging Automative LLC v. Kia Corp.*,
   No. 2:23-CV-00434-JRG, 2025 WL 904383 (E.D. Tex. Mar. 25, 2025) ................................. 5, 7

*Fromson v. W. Litho Plate & Supply Co.*,
   853 F.2d 1568 (Fed. Cir. 1988) ..................................................................................................... 5

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ..................................................................................................... 4

*Sci. Applications Int'l Corp. v. United States*,
   163 Fed. Cl. 257 (2022) ................................................................................................................. 5

**Rules**

Fed. R. Civ. P. 26(b)(1) ......................................................................................................................... 4

Defendant Lenovo Group Limited ("LGL") respectfully moves the Court for an order compelling Plaintiff Universal Connectivity Technologies Inc. ("UCT" or "Plaintiff") to fully respond to LGL's Interrogatory Nos. 16 and 17. ██████████████████████████

██████████████████████████

██████████████ LGL's Interrogatories seek information regarding the methodology, facts, assumptions, etc. (*e.g.*, royalty rate; royalty base) █████████████████

██████████████████████████

██████████████████████████

██████████████████████████

███████████████████, claiming it is not relevant. UCT is mistaken. The information is relevant to damages, as demonstrated by precedents from this Court and others.

I.   **RELEVANT FACTUAL BACKGROUND**

   A.   **UCT's Patent Licensing Business Model**

UCT is a subsidiary of Wi-LAN Technologies Inc., which is a subsidiary of Wi-LAN Inc. (collectively, "WiLAN"). Dkt. 1, ¶2. Each of UCT and WiLAN is a patent licensing company. █████████████████████████████████████ Ex. A at UCT-LENOVO-00033706. ████████████████

████████████████████████████

███████████████. Ex. A at UCT-LENOVO-00033712.

████████████████████████████

████████████████████████████

██████████████████████ Ex. A at UCT-LENOVO-

1

00033706, -00033727.



 **B.** **UCT's Deficient Responses to LGL's Interrogatories**

On March 18, 2025, LGL served UCT with a Third Set of Interrogatories, which contained two Interrogatories (Nos. 16 and 17) seeking details regarding each valuation and licensing revenue estimate, respectively, as to any patent portfolio containing one or more of the Patents-in-Suit. The Interrogatories seeks information regarding, among other things, the facts and/or assumptions on which each valuation/estimate was based or performed (*e.g.*, royalty rate; royalty base; standard-essentiality); the methodology, algorithms, equations, calculations, procedures, or policies by which each valuation/estimate was based or performed; and the identification of persons involved in each valuation/estimate.

UCT served its objections and responses to Interrogatory Nos. 16 and 17 on April 17, 2025. UCT included numerous (and largely boilerplate) objections to each Interrogatory. For example, UCT objected to each Interrogatory "to the extent it seeks information not relevant to the claims and defenses at issue in this action." Subject to those objections, UCT responded by simply referring to its response to a different Interrogatory—which failed to provide any information regarding UCT's internal valuations and estimates as to the Lattice portfolio.

LGL sent a letter to UCT the next day noting the deficiencies in UCT's responses. In particular, LGL noted to UCT that its response to Interrogatory No. 16 failed to provide any information with respect to UCT's ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The parties conferred on these deficiencies on May 1, 2025. UCT's counsel advised that UCT would be serving supplemental responses to each of Interrogatory Nos. 16 and 17 in view of LGL's letter, which UCT did on May 9, 2025. ███████████████████████████████████████████████████████████████████████████████████████████████████████

On May 19, 2025, LGL sent a letter to UCT noting the continued deficiencies in UCT's responses to Interrogatory Nos. 16 and ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The parties conferred on these

3

deficiencies on June 4, 2025. UCT's counsel advised that UCT would supplement its responses to provide additional information regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

## II. LEGAL STANDARD

Rule 26(b)(1) governs the scope of discovery, providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1).

## III. ARGUMENT

The information ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is relevant to the parties' claims and defenses—namely damages.

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty …." 35 U.S.C. § 284. The law allows litigants "several approaches for calculating a reasonable royalty," including a "common approach" called the "hypothetical negotiation." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). As noted by the Federal Circuit, this approach encompasses

---

[1] At the meet and confer, UCT did not object to production of any of this information on the basis on any privilege or work-product doctrine. Indeed, UCT's provision of some (albeit limited) information in response to each of Interrogatory Nos. 16 and 17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

"flexibility," including because "it speaks of negotiations as of the time infringement began, yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators." *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).

Consistent with the flexible nature of damages determinations in patent cases, courts and litigants consistently recognize documents and information regarding valuations and licensing (or royalty) estimates as to asserted patents and/or patent portfolios containing one or more asserted patents as relevant to damages. Indeed, plaintiff-patentees often readily produce such documents and information. *E.g.*, *Sci. Applications Int'l Corp. v. United States*, 163 Fed. Cl. 257, 270 (2022) (noting plaintiff-patentee produced discovery on "estimated licensing fees and profits associated with the patented technology"). And even in those circumstances where a plaintiff-patentee objects to the production of such documents or information, like UCT here, courts consistently overrule such objections and order production of the discovery.

For example, this Court's decision in *Emerging Automotive LLC v. Kia Corp.*, No. 2:23-CV-00434-JRG, 2025 WL 904383, at *1 (E.D. Tex. Mar. 25, 2025), is highly instructive. There, the plaintiff, Emerging Automotive LLC ("EA") had engaged a third party, Sherpa Technology Group, Inc. ("Sherpa"), to monetize its patents. *Id.* at *1. One of the many defendants, Toyota, sought information about those patent monetization efforts—including with respect to "valuations of EA's patent portfolio"—arguing the information was "relevant to at least damages." *Id.* at *1, *3. Sherpa disagreed and filed a motion for a protective order. *Id.* at *1. This Court denied Sherpa's motion, holding that "Sherpa's valuation [] of EA's patent portfolio is discoverable." *Id.* at *3. In particular, this Court stated: "Sherpa's valuation of EA's patents or patent portfolio is relevant to

5

damages in this case." *Id.* As such, the Court authorized discovery on "the valuation process as conducted by Sherpa"—including as to "Sherpa's valuations made or received in regard to negotiations for unconsummated licenses or sales." *Id.* Notably, the facts at bar demonstrated that Sherpa's valuations of EA's patents or patent portfolio related to both Toyota (the defendant requesting the discovery) and "non-Toyota" entities. *See id.* at *2–3 (discussing Sherpa's Evidence of Use charts "against Toyota's and others' products"). And while the Court limited other unrelated discovery (such as Evidence of Use charts) to only Sherpa's activities as to Toyota (*id.*), the Court did not place any such limitation on the discovery it authorized with respect to the "valuation[s]" and the underlying "valuation process" as to EA's patents or patent portfolio. *Id.* at *3.

The court in *ACQIS, LLC v. EMC Corp.*, No. 14-13560-ADB, 2018 WL 1307650, at *1 (D. Mass. Feb. 8, 2018), reached a similar conclusion. There, the plaintiff, ACQIS, LLC ("ACQIS")—like UCT here—was a "patent licensing entity," whose business "entail[ed] building a portfolio of patents and licensing those patents." *Id.* at *2. In the litigation, the defendant sought discovery on various "business analyses of ACQIS' patents" prepared by ACQIS in advance of its "attempts to monetize the [relevant] patent portfolio." *Id.* at *1. ACQIS objected to production of such discovery, including on the grounds of privilege. *Id.* at *1. Prior to the suit at bar, ACQIS had approached "a Robins Kaplan attorney" in connection with ACQIS' plan to monetize the patent portfolio. *Id.* at *2. The court found that some documents shared by ACQIS with Robins Kaplan were privileged. *Id.* *4. But notably, the court found that two documents were "business proposals to license ACQIS technology to competitors with royalty estimates." *Id.* at *5. The court found these "business" documents—including the "royalty estimates" therein—were not privileged and ordered them to be produced as relevant. *Id.*

Similarly here, the information LGL requested in Interrogatory Nos. 16 and 17 regarding the methodology, facts, assumptions, etc. (*e.g.*, royalty rate; royalty base; standard-essentiality) ███████████████████████████████████████████████████████████████████

Indeed, the information is strikingly similar to the discovery ordered in *Emerging Automative* regarding the "valuation process" employed with respect to the valuations of EA's patents or patent portfolio—regardless of the defendant/licensee.[2] 2025 WL 904383, at *3; *see ACQIS*, 2018 WL 1307650, at *5 (ordering production of "royalty estimates" as to "competitors"). The methodology, facts, assumptions, etc. ███████████████████████████████████ are further relevant to evaluating (and rebutting) any potentially different, litigation-inspired methodology, facts, assumptions, etc. that may newly be suggested by UCT or its damages expert in this case.[3]

IV. **CONCLUSION**

For all these reasons, LGL respectfully requests the Court issue an order compelling UCT to provide responsive information to LGL's Interrogatory Nos. 16 and 17 as ███████████████████████████████████████████████████████████████████████████████

---

[2] This discovery ordered in *Emerging Automative* was in the form of deposition testimony, as opposed to written discovery responses, as the case here. 2025 WL 904383, at *3. The relevance of this type of "valuation" discovery in patent cases, however, remains the same.

[3] The requested information on the methodology, facts, assumptions, etc. ███████████████████████████████████████████ is also relevant here, given the open question as to whether any of the Patents-in-Suit is subject to any fair, reasonable, and/or non-discriminatory (*e.g.*, RAND; FRAND) licensing obligation(s). Indeed, Count IX of UCT's Complaint alleges that UCT has complied with any and all applicable intellectual property policies of two standards-setting organizations, the Video Electronics Standards Association ("VESA") and the USB Implementers Forum, Inc. ("USB-IF"), each of which imposes RAND and/or FRAND licensing obligations on its members. Dkt. 1, ¶¶98–101. As such, ██████████ ████████████████████ re relevant to UCT's claim for damages in this case and should be produced.

7

Dated: June 11, 2025

Respectfully Submitted,

*/s/ Steven D. Moore*
Steven D. Moore
**KILPATRICK TOWNSEND & STOCKTON LLP**
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone: (415) 576-0200
Facsimile:  (415) 576-0300
Email:  smoore@ktslaw.com

Russell A. Korn
Joshua H. Lee
Christopher S. Leah
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: rkorn@ktslaw.com
Email: jlee@ktslaw.com
Email: cleah@ktslaw.com

Kasey E. Koballa
**KILPATRICK TOWNSEND & STOCKTON LLP**
4208 Six Forks Road
Raleigh, NC  27609
Telephone: (919) 420-1700
Facsimile:  (919) 420-1800
Email:  kkoballa@ktslaw.com

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendant Lenovo Group Limited*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2025, all counsel of record who have consented to electronic service are being served with a copy of this filing via email, as well as a copy of the filing via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

<i>/s/ Steven D. Moore</i><br>
Steven D. Moore

**CERTIFICATE OF CONFERENCE**

Counsel for both parties have complied with the meet and confer requirements of Local Rule CV-7(h). In particular, counsel for Defendant, including lead counsel Steve Moore, local counsel Tom Gorham, Joshua Lee, and Kasey Koballa, met and conferred with counsel for Plaintiff, including lead counsel Brett Cooper, local counsel Andrea Fair, Ashley Ratycz, and Jonathan Yim, regarding the issues raised herein on June 4, 2025. The parties were unable to reach agreement during the meet and confer the issues raised herein, including because Plaintiff maintains that the information requested is not relevant to any parties' claims or defenses. Therefore, at the conclusion of the meet and confer, the parties reached an impasse leaving open one or more issues for this Court to resolve. And Plaintiff opposes this Motion to Compel.

<i>/s/ Steven D. Moore</i><br>
Steven D. Moore

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that this Motion and the Exhibits attached hereto are authorized to be filed under seal pursuant to the June 24, 2024, Protective Order (Dkt. 32).

<i>/s/ Steven D. Moore</i><br>
Steven D. Moore